**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FIRST BANK BUSINESS CAPITAL, INC. f/k/a FB Commercial Finance, Inc., | | |
| Plaintiff, | | No. 08-CV-1035-LRR |
| vs. | | **ORDER** |
| AGRIPROCESSORS, INC., LOCAL PRIDE, LLC, ABRAHAM AARON RUBASHKIN and SHOLOM RUBASHKIN, | | |
| Defendants. | | |

_____

*TABLE OF CONTENTS*

I.    **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.   **COMPLAINT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
      A.   *General Allegations* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
      B.   *Four Counts: Three Causes of Action &*
           *an Application for a Receiver* . . . . . . . . . . . . . . . . . . . . . . **4**
      C.   *Jurisdiction & Venue* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**
      D.   *Service* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**

III.  **APPOINTMENT OF RECEIVER** . . . . . . . . . . . . . . . . . . . . . . . **6**
      A.   *Emergency Motion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**
      B.   *Order Appointing Limited & Interim Receiver* . . . . . . . . . . **9**
      C.   *Agriprocessors Files for Bankruptcy* . . . . . . . . . . . . . . . . **11**

IV.   **PRE-DISCOVERY LEGAL WRANGLING** . . . . . . . . . . . . . . . . **13**

V.    **THE MOTIONS TO DISMISS** . . . . . . . . . . . . . . . . . . . . . . . . **16**
      A.   *Motions* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **16**
      B.   *Resistance* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **17**
      C.   *Reply* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **18**
      D.   *Supplemental Briefing* . . . . . . . . . . . . . . . . . . . . . . . . . . **19**
           1.   *First Bank* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **21**
           2.   *Local Pride & Aaron Rubashkin* . . . . . . . . . . . . . . . **21**

VI.   **SUBJECT MATTER JURISDICTION** . . . . . . . . . . . . . . . . . . . . . . . **21**

VII.  **WAIVER** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **22**
      A.    *General Principles* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **23**
      B.    *Seminal Cases* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **25**
            1.    **Manchester Knitted Fashions** . . . . . . . . . . . . . . . . . . . . **25**
            2.    **Marquest Medical Products** . . . . . . . . . . . . . . . . . . . . **27**
      C.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **29**

VIII. **DISPOSITION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **32**

## I.  INTRODUCTION

The matters before the court are Defendant Abraham Aaron Rubashkin's Motion to Dismiss (docket no. 42) and Defendant Local Pride, LLC's Motion to Dismiss (docket no. 43) (collectively, "Motions"). The parties do not request oral argument on the Motions, and the court finds oral argument is not appropriate. The Motions are fully submitted and ready for decision.

## II.  COMPLAINT

On October 30, 2008, Plaintiff First Bank Business Capital, Inc. f/k/a FB Commercial Finance, Inc. ("First Bank") filed a Complaint against Defendants Agriprocessors, Inc. ("Agriprocessors"), Local Pride, LLC ("Local Pride"), Abraham Aaron Rubashkin ("Aaron Rubashkin") and Sholom Rubashkin (collectively, "Defendants").

### A.  General Allegations

First Bank alleges the following facts in its Complaint:

Agriprocessors owns and operates a large kosher meatpacking plant in Postville, Iowa. Local Pride is a wholly-owned subsidiary of Agriprocessors. Aaron Rubashkin and Sholom Rubashkin are either shareholders or corporate officers of the two companies.

Under the terms of a series of credit agreements ("Credit Agreement") and an exchange-revolving note ("Note"), First Bank agreed to lend up to $35 million to

2

Agriprocessors and Local Pride on a revolving basis. As a condition of the loan, Agriprocessors and Local Pride granted First Bank a first-priority security interest in and lien on almost all of their property, including accounts receivable, inventory and proceeds ("the Collateral"). First Bank filed Uniform Commercial Code ("UCC") Financing Statements with the Iowa Secretary of State to perfect its security interest in the Collateral.

Aaron Rubashkin and Sholom Rubashkin signed a series of guaranties in favor of First Bank. Aaron Rubashkin unconditionally guarantied the payment of all of Agriprocessors' and Local Pride's obligations owing to First Bank; Sholom Rubashkin's guaranty is limited to $1 million plus interest and First Bank's costs and expenses of collection. Aaron Rubashkin also separately signed a pledge agreement ("Pledge Agreement"), in which he granted First Bank a security interest in an approximately $2 million certificate of deposit he owns at First Bank.

In 2008, Agriprocessors and Local Pride breached the Credit Agreement and otherwise defaulted their obligations to First Bank. Simply put, Agriprocessors and Local Pride defrauded First Bank. Agriprocessors and Local Pride diverted $1.3 million worth of the Collateral to a bank in Luana, Iowa, commingled the Collateral with other funds and overstated the amount of Collateral available to First Bank.

First Bank is entitled to accelerate all amounts owing under the Note, obtain immediate possession of the Collateral and collect the amounts owing under the guaranties. From about June of 2008 through October 29, 2008, First Bank repeatedly notified Agriprocessors and Local Pride of their breaches and defaults under the Credit Agreement and undertook "intensive efforts to work out the parties' disputes." *Id.* at ¶ 39. Defendants did not pay any of the amounts due under the Note or the guaranties.

As of October 30, 2008, the outstanding balance on the Note was approximately $33.5 million plus interest, late charges, fees, expenses and other costs of collection.

## B. Four Counts: Three Causes of Action & an Application for a Receiver

The Complaint contains four counts, in which First Bank asserts three causes of action against Defendants under state law.

Count I is a "Suit on Note" against Agriprocessors and Local Pride. First Bank seeks all amounts due under the Note from Agriprocessors and Local Pride pursuant to the terms of the Credit Agreement.

Count III is a "Suit on Unlimited Guaranty" against Aaron Rubashkin. First Bank seeks judgment against Aaron Rubashkin for all amounts due from Agriprocessors and Local Pride, pursuant to the terms of his guaranties in favor of First Bank.

Count IV is a "Suit on Limited Guaranty" against Sholom Rubashkin. First Bank seeks judgment against Sholom Rubashkin in the amount of $1 million plus interest and First Bank's costs and expenses of collection, pursuant to the terms of his guaranties in favor of First Bank.

Although styled as a claim for relief, Count II is an application for the "Appointment of Receiver." Count II is a "procedural matter" and not a "cause of action."[1] In Count II, First Bank asks the court to appoint a third party, Atec Liquidations, Inc. d/b/a Atec, Inc ("Atec") to take control of the Collateral to preserve First Bank's rights therein. First Bank asks that Atec be given "the power to perform all

---

[1] *See, e.g.*, Fed. R. Civ. P. 66 ("These rules govern an action in which the appointment of a receiver is sought . . . ."); *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993) ("The appointment of a receiver in a diversity case is a procedural matter governed by federal law and federal equitable principles."); *Nat'l P'ship Inv. Corp. v. Nat'l Hous. Dev. Corp.*, 153 F.3d 1289, 1291 (11th Cir. 1998) ("[T]he appointment of a receiver in equity is not a substantive right; rather, it is an ancillary remedy which does not affect the ultimate outcome of the action."); *ABM Janitorial Servs.-N. Central, Inc. v. PAMI Ryan Town Centre LLC*, Nos. 08-CV-100-LRR & 08-CV-123-LRR, 2008 WL 460597, *5 (N.D. Iowa Oct. 22, 2008) (holding application for receiver in a complaint is not a "cause of action").

acts necessary to protect and preserve the Collateral (including but not limited to the sale of the Collateral free and clear of liens and other claims) . . . ." *Id.* at ¶ 61.

In support of its request for a receiver, First Bank further alleged: (1) the Collateral was in the possession of Agriprocessors and Local Pride as of October 30, 2008; (2) on October 30, 2008, First Bank attempted to inspect some of the Collateral, but representatives of Agriprocessors and Local Pride "instructed employees of First Bank . . . to leave the [b]orrowers' premises," *id.* at ¶ 53; (3) Agriprocessors and Local Pride "may have misappropriated other Collateral as well, and unless a receiver is appointed, [they] may attempt to conceal or transfer other assets constituting First Bank's Collateral," *id.*; (4) Agriprocessors and Local Pride were "continuing to operate their business and to incur obligations that they do not have the ability to pay as they come due," *id.* at ¶ 54; (5) federal agents arrested Sholom Rubashkin on October 30, 2008 on immigration and identity-theft charges; (6) much of the Collateral consists of perishable food and livestock and was in "imminent danger of losing value," *id.* at ¶ 57; (7) a utility intended to shut off electric service to the meatpacking plant if it did not receive over $250,000 on or before November 3, 2008; (8) termination of electric service would result in "spoilage of millions of dollars of fresh and frozen meat products in the [b]orrowers' inventory," *id.*; and (9) "millions of chicks and chickens in the [b]orrowers' inventory [were] in danger of starving to death if they [were] not provided with appropriate feed and water," *id.*

## C. Jurisdiction & Venue

First Bank invoked this court's diversity jurisdiction under 28 U.S.C. § 1332, because First Bank "and each defendant are of diverse citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs." *Id.* at ¶ 6. First Bank alleged the court had personal jurisdiction over Agriprocessors and Local Pride, because they are Iowa corporations with their principal places of business in Iowa. First Bank alleged personal jurisdiction over Aaron Rubashkin and Sholom Rubashkin, corporate

officers of Agriprocessors, because they had "conducted business within the State of Iowa . . . in connection with . . . the contracts and relationships between First Bank and Agriprocessors and the allegations and claims set forth [in the Complaint]." *Id.* at ¶¶ 9, 10. First Bank alleged venue was proper in the Northern District of Iowa

> pursuant to 28 U.S.C. § 1391(a) and (c) in that this is the judicial district in which a substantial part of the events giving rise to plaintiff's claims occurred as well as the judicial district in which substantially all of the property that is the subject of this action is situated, and, for purposes of venue, the corporate defendant[s] [are] deemed to reside in [the Northern District of Iowa].

Id. at ¶ 11.

### D. Service

On October 30, 2008, the Clerk of Court issued a blank Summons (docket no. 2) to First Bank for service upon Defendants. First Bank immediately served Summonses (docket nos. 4 & 5) on Agriprocessors and Local Pride in Des Moines, Iowa. On November 2, 2008, First Bank served a Summons (docket no. 16) on Sholom Rubashkin in Postville, Iowa. On November 3, 2008, First Bank served a Summons (docket no. 19) on Aaron Rubashkin in Brooklyn, New York.

### III. APPOINTMENT OF RECEIVER

### A. Emergency Motion

On October 31, 2008, First Bank filed an Emergency Motion for Appointment of Receiver ("Emergency Motion") (docket no. 6), pursuant to Federal Rule of Civil Procedure 66, "federal common law, and this [c]ourt's inherent equitable powers . . . ." Brief in Support of Emergency Motion ("Brief") (docket no. 6-4), at 2. First Bank contemporaneously filed a Motion for Expedited Hearing (docket no. 7). First Bank asked the court to set a hearing on the Emergency Motion "as soon as allowable on the [c]ourt's schedule, if possible, on October 31, 2008." Motion for Expedited Hearing (docket no. 7), at 1.

In the Emergency Motion, First Bank asked the court to appoint Atec as receiver over the Collateral. First Bank requested the court grant Atec broad powers; First Bank proposed Atec have "all powers, privileges, and prerogatives ordinarily accorded to receivers under the law and in equity," including near-complete control over the finances of Agriprocessors and Local Pride. Proposed Order (docket no. 6-3), at ¶ 3; *see id.* (proposing Atec be granted the ability "to collect and receive the proceeds of the [b]orrowers' accounts receivable and any and all other sums of money due or owing to the [b]orrowers that constitute or relate to the [C]ollateral . . . .").

The allegations in the Emergency Motion mirror the allegations in the Complaint. Mr. Phillip M. Lykens, an Executive Vice President of First Bank, filed a Declaration (docket no. 6-5) in which he attested to the truth of all facts asserted. First Bank represented to the court that the situation in Postville was dire and required immediate court action:

> [Agriprocessors and Local Pride] are in a state of operational disarray, they have diverted and misappropriated First Bank's collateral, and they have repeatedly provided First Bank with misleading and fraudulent statements regarding their finances. The [b]orrowers' assets in which First Bank holds an interest are in imminent danger of deteriorating or being lost altogether. The immediate appointment of a receiver is necessary . . . .
>
> * * *
>
> [Electricity is due to be shut off on November 3, 2008.] [Even if power is not shut off,] millions of live chicks and chickens . . . are in immediate danger of dying or losing value if [Agriprocessors and Local Pride] are no longer feeding and caring for them.
>
> * * *
>
> [In addition to the federal charges referenced in the Complaint, Sholom] Rubashkin and others previously were charged with 9,311 misdemeanor counts under Iowa's child-labor laws. [T]he temporary employment agency that supplied approximately half of the [b]orrowers' workers . . . removed

all of its workers from the [b]orrowers' employment.

Brief at 1 & 7-8. Mr. Paul Lerman, Atec's Chairman and CEO, testified in an affidavit that he had a representative present in Iowa and was "prepared to be at the [b]orrowers' facilities and to take possession of the [b]orrowers' assets within several hours after entry of this [c]ourt's order appointing Atec as receiver." Declaration of Paul Lerman (docket no. 6-2), at ¶ 10.

Counsel for First Bank filed a series of attachments to the Complaint, including the Credit Agreement (docket no. 6-7).[2] Section 9.12 of the Credit Agreement contains the following paragraph:

> **Section 9.12 <u>Governing Law; Jurisdiction, Venue</u>** The Loan Documents shall be governed by and construed in accordance with the internal substantive laws (other than conflicts-of-law principles) of the State of Missouri, regardless of the place of execution of this Agreement by any party thereto. Each party consents to the personal jurisdiction of the state and federal courts located in the State of Missouri in connection with any controversy related to this Agreement, waives any argument that venue in any such forum is not convenient *and agrees that any litigation initiated by any of them in connection with this Agreement shall be venued in either the Circuit Court of St. Louis County, Missouri, or the United States District Court, Eastern District of Missouri.*

Credit Agreement (docket no. 6-7), at 44 (bold in original, italics supplied). Elsewhere the Credit Agreement defines "Loan Documents" as

---

[2] Other attachments not previously mentioned included a thirteen-page sworn summary of Atec's qualifications (docket no. 6-2); a fifteen-page proposed Order Appointing Receiver (docket no. 6-3); the Note (docket no. 6-6); five amendments to the Credit Agreement (docket nos. 6-8 through 6-12), the UCC Financing Statement and Amendments thereto (docket no. 6-13); and copies of thirteen "bounced" checks (docket no. 6-14), in the total amount of $1.3 million, which were written on the Luana bank account.

> this [Credit] Agreement, the Note and the Security Documents,
> and each other instrument, agreement and document executed
> and delivered by the Borrower in connection with this
> Agreement and each other instrument, agreement or document
> referred to herein or contemplated hereby or otherwise to be
> delivered from time to time pursuant to this Agreement with
> respect to Loans or otherwise.

*Id.* at 53. The Credit Agreement defines Security Documents as "the Collateral Account Agreements, the Intellectual Property Security Agreements, each Guaranty and the Collateral Assignment Agreement and each other writing executed and delivered by any Person securing the Obligations or evidencing such security." *Id.* at 11.

The court granted the Motion for Expedited Hearing and set a hearing on the Emergency Motion for October 31, 2008, at 4:00 p.m. Pursuant to court order, First Bank served Defendants with all documents filed in connection with the Emergency Motion. *See* Certificates of Service (docket nos. 9, 17 & 21); Affidavits of Service (docket nos. 16 & 19).

### B. Order Appointing Limited & Interim Receiver

Before the 4:00 p.m. hearing on the Emergency Motion, the parties asked for a telephonic scheduling conference. The court held the telephonic status conference around 2 p.m. on October 31, 2008. Attorney Eric Lam appeared for First Bank. Attorneys Mark Weinhardt and Chris McDonald appeared for Agriprocessors, Local Pride and Aaron Rubashkin.[3]

The court informed the parties on the telephone that it intended to hold a hearing on the Emergency Motion as scheduled at 4 p.m. However, the court suggested that the parties try to reach an agreement to preserve the status quo so the hearing might be

---

[3] Attorneys Weinhardt and McDonald initially expressed reluctance to represent Local Pride but later stipulated that they did so. *Compare* Minutes (docket no. 10), at 1, *with* Order Appointing Limited & Interim Receiver (docket no. 1), at 1.

continued to the following week after the parties and the court had more time to prepare. The court then adjourned the telephonic status conference.

Later in the afternoon, the parties informed the court that they had reached an agreement. The parties entered the terms of the agreement on the record at a telephonic hearing held later that day. The parties agreed the court should appoint Atec as a temporary receiver over the Collateral in the possession of Agriprocessors and Local Pride. Atec would have four limited powers: (1) the right of entry and inspection of the debtors' premises; (2) the right to inspect and ensure that all animals were fed; (3) the right to make sure that refrigeration was operational and the inventory was preserved; and (4) the right to ensure electrical power was maintained. The parties also agreed Atec would post a $50,000 bond with the court on or before November 3, 2008, at 10 a.m. Counsel for Agriprocessors, Local Pride and Aaron Rubashkin promised the court that Aaron Rubashkin would personally ensure that a good check would be delivered to the utility, Alliant Energy, on the morning of November 3, 2008. The court indicated it would accept the parties' stipulations but asked the parties to reduce their agreement to writing in the form of an order for the court's signature. The court continued the final hearing on the Emergency Motion to Wednesday, November 5, 2008, at 9 a.m.

At 4:45 p.m., the court signed and filed the parties' stipulation and order, the "Order Appointing Limited and Interim Receiver" (docket no. 11). Such order provided:

     1.     [Atec] is hereby appointed as Interim Receiver;

     2.     The Receiver shall post a bond in the amount of $50,000, by no later than 10:00 a.m. Monday November 3, 2008.

     3.     The Receiver is granted the limited powers to:

     A.     Enter and inspect the premises of the [Agriprocessors], for the sole and limited purpose of preserving the status quo;

> B.     Maintain refrigeration and similar adequate condition so
> the meat and related inventory are preserved and not spoiled;
>
> C.     Maintain feed and water to all animals;
>
> D.     Maintain electrical power and other utility services to
> the premises;
>
> E.     Make such payments and disbursements and incur such
> expenses, as may be reasonably necessary or advisable in the
> course of discharging the duties specified in this Order; and
>
> F.  Obtain advances of funds from First Bank to the extent that
> the Receiver deems necessary or appropriate to preserve or
> protect the Collateral or the value of the Collateral.
>
> 4.  In addition, [Agriprocessors] and/or [Aaron Rubashkin]
> shall cause good funds be delivered to and received by Alliant
> Energy by no later than noon Monday November 3, 2008,
> such that electrical power to the premises are not terminated.

Order Appointing Limited & Interim Receiver at 1-2.

First Bank immediately served Defendants with all papers in connection with the

Order Appointing Receiver.  *See* Certificate of Service (docket nos. 17, 20 & 21);

Affidavits of Service (docket nos. 17-2, 19).  On November 4, 2008, Atec posted the

$50,000 bond, effective October 31, 2008.  Bond (docket no. 18), at 2.

### C.  *Agriprocessors Files for Bankruptcy*

The court spent the next five days diligently preparing for the final hearing

scheduled for November 5, 2008.  In anticipation of the final hearing, counsel for First

Bank flew to Cedar Rapids, Iowa from St. Louis, Missouri.  Counsel for First Bank

arrived at the courthouse on November 5, 2008 ready and prepared for the final hearing.

Unbeknownst to First Bank and the court, however, on the evening of November

4, 2008, Agriprocessors filed for Chapter 11 bankruptcy in the United States Bankruptcy

Court for the Eastern District of New York.[4]  The court did not learn of the bankruptcy petition until less than an hour before the final hearing.  Counsel for Agriprocessors failed to inform the court or First Bank of the bankruptcy filing, and Defendants failed to appear for the final hearing.  Although counsel for Agriprocessors in the case at bar does not represent Agriprocessors in the bankruptcy case, counsel for Agriprocessors, Local Pride and Aaron Rubashkin in the case at bar knew of the bankruptcy filing and did not inform the court or First Bank.  The failure to notify was intentional, calculated to increase the costs of First Bank and designed to delay the instant proceedings.[5]

Later in the day on November 5, 2008, First Bank filed a "Motion to Voluntarily Withdraw its Emergency Motion for Appointment of Receiver with Respect to [Local Pride] Without Prejudice" ("Motion to Withdraw") (docket no. 24).  First Bank expressed the view that Agriprocessors' bankruptcy filing stayed the Order Appointing Limited and Interim Receiver as to Agriprocessors under 11 U.S.C. § 362.  First Bank pointed out, however, that Local Pride had not filed for bankruptcy.  First Bank stated that

> proceeding with a hearing and/or determination on the [Emergency Motion] with respect to Local Pride only would be a waste of judicial resources and unnecessary in light of the limited assets and/or resources that are held by Local Pride and the likelihood that Local Pride would respond by filing a bankruptcy petition before effective relief could be implemented.

---

[4]  Chief Judge Carla E. Craig later found venue improper or inconvenient and transferred Agriprocessors' bankruptcy proceedings to the United States Bankruptcy Court for the Northern District of Iowa.

[5]  After the court learned the receivership hearing was cancelled, the Clerk of Court notified the court that counsel for Agriprocessors, Local Pride and Aaron Rubashkin inadvertently sent the Clerk of Court an email that clearly indicated that counsel knew of the bankruptcy filing on November 4, 2008.  Counsel has offered no explanation for failing to promptly apprise the court and First Bank of the bankruptcy filing.

Motion to Withdraw at 2. First Bank voluntarily moved to withdraw its Emergency Motion, as to Local Pride only, without prejudice.

On the same date, the court granted the Motion to Withdraw in an Order (docket no. 25). The court directed Attorneys Weinhardt and McDonald to enter their formal written appearances "forthwith" for Agriprocessors, Local Pride and Aaron Rubashkin. Order at 2.

On November 19 and 20, 2008, Attorneys Weinhardt, McDonald and Holly Logan entered their Appearances (docket nos. 26, 28 & 29) on behalf of Agriprocessors, Local Pride and Aaron Rubashkin.

## IV. PRE-DISCOVERY LEGAL WRANGLING

On November 19, 2008, the last date for filing an answer or other responsive pleading to the Complaint, Local Pride filed a "Motion for Extension of Time to Answer" (docket no. 27). Local Pride represented to the court that it was working "diligently" with third parties to secure, "in the next thirty days," alternative sources of financing to pay off the debt that First Bank asserts in the Complaint and thus "render this action moot." Motion for Extension (docket no. 27), at 1. Local Pride stated that such debt, if true and collectible, would render Local Pride insolvent and, therefore, "Local Pride accordingly intends to file for Chapter 11 bankruptcy protection in the imminent future if necessary." *Id.* at 2. Local Pride asked for an additional thirty days to file an "answer" to the Complaint, that is, until December 19, 2008. *Id.*

On November 20, 2008, the Limited and Interim Receiver, Atec, filed a motion to exonerate its Receiver's Bond (docket no. 30). Atec indicated that the receivership proceedings over the assets of Agriprocessors and Local Pride could not proceed while Agriprocessors was in bankruptcy and asked that the court exonerate its bond.

On November 21, 2008, First Bank filed a Resistance (docket no. 34) to Local Pride's Motion for Extension of Time to Answer. First Bank stated it was unaware of any

negotiations to pay off the debt owed to it, a Chapter 11 trustee was administering Agriprocessors' bankruptcy and Agriprocessors and Local Pride were all "owned and controlled by the Rubashkin family." Resistance at 1. First Bank stated that, if Local Pride intended to file for bankruptcy protection, it should do so now rather than later.

On November 21, 2008, three days before expiration of his deadline for filing an answer or other responsive pleading, Sholom Rubashkin filed a Motion for Enlargement of Time to File Answer (docket no. 35). Sholom Rubashkin reminded the court that a United States Magistrate Judge had detained him on his pending federal criminal charges.[6] Sholom Rubashkin pointed out that the allegations in the Complaint are similar to the those underlying some of the federal criminal charges. He asked for additional time to answer or file a motion to stay this action pending the outcome of his criminal proceedings. Sholom Rubashkin requested a thirty-day extension.

On November 24, 2008, the last date for filing an answer or other responsive pleading to the Complaint, Aaron Rubashkin filed a "Motion for Extension of Time to Answer or Otherwise Plead." Motion (docket no. 38). Aaron Rubashkin asked for an additional twenty-five days to file an "answer." Motion at 3. He cited the ongoing negotiations between Local Pride and third-parties as well as the ongoing criminal investigation of Agriprocessors as justification for an extension. Although the government had not charged Aaron Rubashkin with any crimes or named him a target of its investigation, he "request[ed] additional time to respond to the Complaint in light of the severe criminal implication such a response could have for him in the event he becomes a target of the government's investigation." *Id.* at 2. He stated an "other plea" might be necessary "consistent with his right against self incrimination under the Fifth Amendment

---

[6] *See generally United States v. Rubashkin*, No. 08-MJ-381-JSS, 2008 WL 4960225, *passim* (N.D. Iowa Nov. 20, 2008). The undersigned later released Sholom Rubashkin. *See generally United States v. Agriprocessors, Inc.*, No. 08-CR-1324-LRR, 2009 WL 290473, *passim* (N.D. Iowa Jan. 26, 2009).

to the United States Constitution." *Id.*

On November 25, 2008, Plaintiff filed a Resistance (docket no. 40) to the pending motions of Sholom Rubashkin and Aaron Rubashkin. Plaintiff characterized the pending motions as "endeavors to thwart and delay [Plaintiff's] collection efforts." Resistance at 1. First Bank pointed out Defendants' practice of filing their documents at the last possible moment. First Bank accused Agriprocessors' counsel in the bankruptcy case of attempting to delay those proceedings and concluded that "[t]he pattern of delay tactics by the defendants in this case is obvious." *Id.* at 3.

On November 26, 2008, the court held a telephonic hearing on all pending motions. Attorneys Eric Lam and Kevin Abel represented First Bank, Attorney F. Montgomery Brown represented Sholom Rubashkin and Attorney Mark Weinhardt represented Local Pride and Aaron Rubashkin.

At the outset of the hearing, the court cautioned Attorney Weinhardt that his conduct prior to the hearing on the Motion for Receiver was unacceptable and, if repeated, would result in an award of sanctions. The court also discouraged the parties from filing motions for extensions of time on the date of a deadline. The court stated that the parties should not expect the court to routinely grant continuances and extensions of time.

The court adopted the parties' position that all proceedings against Agriprocessors should be stayed so long as Agriprocessors remained in bankruptcy. The court then granted Atec's motion to exonerate its bond as unresisted. First Bank then made an oral motion to withdraw the entirety of the Emergency Motion without prejudice. The court granted the motion to withdraw, thereby terminating Atec's limited and interim receivership over Local Pride.

The parties then presented argument on the pending motions for extensions. No party mentioned filing a motion under Federal Rule of Civil Procedure 12, a problem with venue or the forum-selection clause attached to the Complaint; the parties' arguments

mirrored the arguments in their briefs on the pending motions.

The court then granted Sholom Rubashkin's motion to extend and extended the deadline for his answer to December 23, 2008. The court granted in part and denied in part the pending motions of Local Pride and Aaron Rubashkin. The court ordered Local Pride and Aaron Rubashkin to file their "answers" on or before December 8, 2008. *See* Minutes (docket no. 41), at 2.

## V. THE MOTIONS TO DISMISS

### A. Motions

On December 8, 2008, Local Pride and Aaron Rubashkin filed the Motions instead of answers to the Complaint. Local Pride and Aaron Rubashkin ask the court to dismiss them from this lawsuit without prejudice. They rely on the forum selection clauses in the Credit Agreement and Pledge Agreement.

Local Pride characterizes § 9.12 of the Credit Agreement as a mandatory forum selection clause and argues it should be dismissed from this case without prejudice. Aaron Rubashkin likewise opines that § 9.12 of the Credit Agreement is a mandatory forum selection clause and, even though he was not a party to this agreement, it should nonetheless be enforced against First Bank. Aaron Rubashkin also argues that the Pledge Agreement, to which he and First Bank are signatories, contain a mandatory forum selection clause that governs this action. Section 11(a) of the Pledge Agreement, dated September 23, 1999, provides:

> Each party consents to the personal jurisdiction of the state and federal courts located in the State of Missouri in connection with any controversy related to this Agreement, waives any argument that venue in any such forum is not convenient and agrees that any litigation initiated by any of them in connection with this Agreement shall be venued in either the Circuit Court of St. Louis County, Missouri, or the United States District Court, Eastern District of Missouri.

Pledge Agreement (docket no. 42-7), at 4.[7]

## B. *Resistance*

On December 22, 2008, First Bank filed a combined Resistance (docket no. 45) to the Motions. First Bank stresses that venue is proper under 28 U.S.C. § 1391 as to all Defendants, because a substantial amount of the property at issue in this case is located in the Northern District of Iowa. First Bank points out that the forum selection clauses upon which Local Pride and Aaron Rubashkin rely in the Motions are not present in the legal documents upon which First Bank is suing, *i.e.*, the Note and the Unlimited Guaranty. First Bank accuses Local Pride and Aaron Rubashkin of attempting to "bootstrap" forum selection clauses in other documents into this lawsuit. Brief in Support of Resistance (docket no. 45-2), at 6. First Bank opines that it "makes no sense" that First Bank would have been required to seek an appointment of a receiver in this court but then file its claims for collection against Local Pride and Aaron Rubashkin elsewhere. *Id.* at 5. First Bank points out that the Pledge Agreement only secures a minuscule portion of Aaron Rubashkin's unlimited guaranty. First Bank accuses Local Pride and Aaron Rubashkin of "procedural gamesmanship." *Id.* at 7.

In the event the court deems the mandatory forum selection clauses in the Credit Agreement and Pledge Agreement to apply to the instant case, First Bank argues dismissal without prejudice is not the proper remedy. First Bank contends the proper remedy is transfer under 28 U.S.C. § 1404(a). Because Local Pride and Aaron Rubashkin did not seek transfer, the court should deny the Motions.

To the extent the court entertains an argument for transfer to the United States District Court for the Eastern District of Missouri, First Bank contends such a transfer is

---

[7] On December 23, 2008, Sholom Rubashkin filed an Answer (docket no. 46) to the Complaint. Sholom Rubashkin invoked his right against self-incrimination in response to many paragraphs of the Complaint. He affirmatively states that venue is improper in the Northern District of Iowa for the reasons stated in the Motions.

not warranted. First Bank maintains the convenience of parties, the convenience of witnesses and the interests of justice all weigh against transfer. First Bank points out that Local Pride is an Iowa corporation; Aaron Rubashkin does business in the Northern District of Iowa; almost all of the witnesses in this case are located in Iowa instead of Missouri; Sholom Rubashkin is prohibited from traveling outside the Northern District of Iowa; Agriprocessors' bankruptcy case was transferred to the Northern District of Iowa; and Agriprocessors and Sholom Rubashkin are under indictment in the Northern District of Iowa. First Bank characterizes the forum selection clauses as the only factor militating in favor of a transfer and argues that, under the facts of this case, the court should not give the forum selection clauses much weight.

In the final alternative, First Bank asks the court to transfer this case to the United States District Court for the Eastern District of Missouri, pursuant to 28 U.S.C. § 1406(a). First Bank argues transfer is preferable to dismissal without prejudice. First Bank opines that dismissal with prejudice would cause unnecessary delay and create difficulties for First Bank in effecting service upon Defendants.

### C.  Reply

On December 30, 2008, Local Pride and Aaron Rubashkin filed a combined Reply (docket no. 47). Local Pride and Aaron Rubashkin dispel First Bank's concern about difficulties of service in any Missouri court and promise to accept service there through counsel. Further, Local Pride and Aaron Rubashkin promise they would not challenge personal jurisdiction or venue in any Missouri court.

Local Pride and Aaron Rubashkin reiterate their position in the Motions that the forum selection clauses of the Credit Agreement and the Pledge Agreement "unquestionably" apply to this case. Reply at 6. Local Pride and Aaron Rubashkin emphasize that the plain language of § 9.11 of the Credit Agreement indicates that the Credit Agreement, Pledge Agreement, Note and Guaranties are all a part of the same

overall agreement; as a consequence, "First Bank cannot . . . subdivide its transaction documents into pieces, choosing only those parts that it likes." *Id.* at 4.

Local Pride and Aaron Rubashkin opine that "First Bank cannot claim with a straight face that this lawsuit is not brought 'in connection with' the Pledge Agreement for purposes of the forum selection clause in that document . . . ." *Id.* at 6. They insist this case must be dismissed without prejudice and transfer is not an available remedy.

In the alternative, Local Pride and Aaron Rubashkin ask the court to transfer the case to the United States District Court for the Eastern District of Missouri under either § 1404(a) or § 1406(a). Local Pride and Aaron Rubashkin opine that mandatory forum selection clauses should be afforded significant weight; Missouri is a more convenient forum than Iowa for Aaron Rubashkin, because air travel to Cedar Rapids is more limited than air travel to St. Louis; and most of the witnesses in this case reside in St. Louis. In sum, Local Pride and Aaron Rubashkin ask the court to hold First Bank to the language of its contracts.

### D. Supplemental Briefing

On January 29, 2009, the court ordered the parties "to brief whether venue in the Northern District of Iowa is already established." Order (docket no. 48). The court ordered the parties to file supplemental briefs on or before February 6, 2009, at 5 p.m.

#### 1. First Bank

On February 5, 2009, First Bank filed a Supplemental Brief (docket no. 49). First Bank argues Local Pride and Aaron Rubashkin waived any right they may have had under the forum selection clauses to challenge to venue in this court.

First Bank maintains Local Pride and Aaron Rubashkin consented to venue in the Northern District of Iowa by their conduct. They point out (1) Local Pride and Aaron Rubashkin waited approximately six weeks to challenge venue; (2) Local Pride and Aaron Rubashkin participated in receivership proceedings in this court; (3) Local Pride and Aaron

Rubashkin stipulated to and signed a court order appointing an interim receiver over Local Pride's and Agriprocessors' assets; (4) in such court order, Aaron Rubashkin promised to undertake certain actions; (5) Local Pride and Aaron Rubashkin filed motions on the date their answers were due, in which they sought extensions of time to "answer" the Complaint; (6) in their motions, Local Pride and Aaron Rubashkin asked for more time to "answer" the complaint but did not ask for more time for a possible motion to dismiss; (7) the court only granted the motions in part and only gave Local Pride and Aaron Rubashkin additional time to "answer"; and (8) Local Pride and Aaron Rubashkin attended multiple hearings in this court.

First Bank emphasizes that the Credit Agreement, upon which Local Pride and Aaron Rubashkin rely so heavily in the Motions, was filed as an attachment to the Emergency Motion. The forum selection clause therein was, at the very latest, available to counsel for Local Pride and Aaron Rubashkin on the day after the Complaint was filed. First Bank also stresses that the Order Appointing Temporary and Limited Receiver was clearly a measure that (1) required the court to examine the merits of the Complaint; (2) restrained the defendants from action or compelled them to action; and (3) affected the assets of the defendants.

First Bank concludes Local Pride and Aaron Rubashkin had multiple opportunities to challenge venue during the six weeks following the filing of the Complaint but failed to do so. First Bank concedes that merely asking the court for more time to respond to a complaint does not waive an objection to venue. In contrast, Local Pride and Aaron Rubashkin affirmatively stated the reasons why they needed more time to file answers, and none of these reasons included a possible venue challenge or, for that matter, any other Rule 12 motion. First Bank argues that, if Local Pride and Aaron Rubashkin are permitted to raise a venue challenge at this stage in the proceedings, it would undermine the underlying policy of the Federal Rules of Civil Procedure to require defendants to object

to threshold determinations such as venue and personal jurisdiction promptly at the outset of proceedings and thereby conserve judicial resources.

### 2. *Local Pride & Aaron Rubashkin*

On February 6, 2009, Aaron Rubashkin and Local Pride filed a Supplemental Brief (docket no. 51). They deny they waived their rights to challenge venue.

As a threshold matter, Local Pride and Aaron Rubashkin point out that they have not waived their rights to seek a change of venue under Federal Rule of Civil Procedure 12. To the extent the Motions are construed as Rule 12(b)(3) motions, Local Pride and Aaron Rubashkin did not waive their right to seek a change of venue because they included the argument in their first responsive pleading; to the extent the Motions are construed as Rule 12(b)(6) motions, their argument is "unwaivable." *Id.* The only basis for finding waiver is on an "equitable" basis. *Id.*

Local Pride and Aaron Rubashkin contend equity does not estop them from seeking a change of venue. They point out that all proceedings on the Emergency Motion occurred within 36 hours of the filing of the Complaint and under exigent circumstances. They contend it is unrealistic to have expected them to assert a venue defense so soon. Local Pride and Aaron Rubashkin contend their motions for extension of time cannot constitute waiver of their right to assert a change in venue.

Aaron Rubashkin emphasizes that he was not a subject of the receivership. He characterizes his role in the receivership as merely that of a "volunteer" who promised to ensure that the utility would receive payment. Supplemental Brief at 2. Aaron Rubashkin also points out the title of his motion to extend time to answer the Complaint was "Motion for Extension of Time to Answer *or Otherwise Plead*" (emphasis added). Local Pride characterizes itself as a "minor subject at best" in this litigation. *Id.*

## VI. SUBJECT MATTER JURISDICTION

The court has diversity subject matter jurisdiction over the Complaint. Title 28,

United States Code, Section 1332 provides: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states . . . ." 28 U.S.C. § 1332. First Bank is a citizen of Missouri; Agriprocessors, Local Pride, Sholom Rubashkin and Aaron Rubashkin are all citizens of other states. The amount in controversy exceeds $75,000.

## VII. WAIVER

The parties agree venue is proper under 28 U.S.C. § 1391 as to all Defendants. The Collateral is located in the Northern District of Iowa. The Collateral qualifies as "a substantial part of the property that is the subject of the action." 28 U.S.C. § 1391(a)(2).

The court shall assume without deciding that the forum selection clauses are mandatory and apply to the Complaint. In other words, the court shall assume without deciding that, under the Credit Agreement and the Pledge Agreement, Local Pride and Aaron Rubashkin have a contractual right to move the venue of this case to the state or federal courts in Missouri.

Likewise, the court shall assume without deciding that the Motions were timely filed under Federal Rule of Civil Procedure 12(b)(3) or 12(b)(6). The court shall also assume the Motions were timely filed under this court's orders.[8]

---

[8] The last assumption is a doubtful one. The statutory deadline for filing a motion to dismiss for improper venue expired on November 19, 2008 for Local Pride and November 24, 2008 for Aaron Rubashkin. Local Pride and Aaron Rubashkin did not ask for more time to file a motion to dismiss but instead asked the court for more time to "answer." The title of Aaron Rubashkin's motion, which indicated a request to "[o]therwise [p]lead," must be viewed in context as a request to assert a right against self-incrimination if necessary. Neither Local Pride nor Aaron Rubashkin asked the court for more time to file a Rule 12 motion, let alone apprise the court that a motion to assert a change of venue was a possibility. *Cf. REO Sales, Inc. v. Prudential Ins. Co.*, 925 F. Supp. 491, 1495 (D. Colo. 1996) (finding defendants did not waive right to challenge
(continued...)

Even if the court makes all of the foregoing assumptions, it nonetheless declines to enforce the forum selection clauses in the Credit Agreement and the Pledge Agreement against First Bank. The court finds Local Pride and Aaron Rubashkin have waived any argument for improper venue by their conduct in this action. In other words, Local Pride and Aaron Rubashkin have consented to suit in the Northern District of Iowa by their conduct. They are now equitably estopped from challenging venue.

### A. *General Principles*

Long ago, the Supreme Court recognized that an objection to venue is a "privilege" that "may be lost." *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 168 (1939). "It may be lost by failure to assert seasonably, by formal submission in a cause, or by submission through conduct." *Id.* "Whether such surrender of a personal immunity be conceived negatively as a waiver or positively as a consent to be sued, is merely an expression of literary preference." *Id.*

The Seventh Circuit Court of Appeals summarized the interplay between the Federal Rules of Civil Procedure and *Neirbo*'s equitable waiver-of-venue-by-conduct doctrine as follows:

> Rule 12(h)(1) of the civil rules requires that two of the multitudinous defenses to a suit that a defendant might plead—lack of personal jurisdiction by virtue of defective service of process or otherwise, and improper venue—be pleaded earlier than any of the others. These defenses are strictly for the convenience of the defendant; he doesn't have to engage in discovery to know whether the forum chosen by the plaintiff is a convenient one; and so there is no reason to allow him to lie back, wait until the plaintiff has invested resources in preparing for suit in the plaintiff's chosen forum,

---

[8](...continued)
venue on ground of forum-selection clause, where the court granted the defendants additional time to "'answer *or otherwise respond* to the Complaint." (emphasis in original)).

wait perhaps to assess his prospects in that forum, and only then demand that the case start over elsewhere. *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 914 (7th Cir. 1994); *Flory v. United States*, 79 F.3d 24, 25 (5th Cir.1996); *Schneider v. National R.R. Passenger Corp.*, 72 F.3d 17, 20 (2d Cir.1995) (per curiam); *Manchester Knitted Fashions, Inc. v. Amalgamated Cotton Garment & Allied Industries Fund*, 967 F.2d 688, 691-92 (1st Cir. 1992).

So improper venue must be pleaded early, but not at the earliest possible opportunity. At least that is not what the rule says. . . . . The defendant can move as early as he wants but he is not required to file a motion. He has a right to wait until he files his answer. Thus he needn't object at the earliest possible opportunity, which might be five minutes after receiving a copy of the complaint.

[A] right can be waived or forfeited. If the defendant tells the plaintiff that he is content with the venue of the suit, or by words or actions misleads the plaintiff into thinking this or the court into becoming involved in the case so that there would be wasted judicial effort were the case to be dismissed to another forum, or if he stalls in pleading improper venue because he wants to find out which way the wind is blowing, then conventional principles of waiver or equitable estoppel come into play and if invoked by the plaintiff block the challenge to venue. [*Neirbo*, 308 U.S. at 167-68]; *Continental Bank, N.A. v. Meyer*, 10 F.3d 1293, 1296-97 (7th Cir. 1993); *cf. Trustees of Central Laborers' Welfare Fund v. Lowery*, 924 F.2d 731, 732-33 (7th Cir. 1991) (per curiam); *Yeldell v. Tutt*, 913 F.2d 533, 538-39 (8th Cir. 1990).

*Am. Patriot Ins. Agency, Inc. v. Mutual Risk Mgmt., Ltd.*, 364 F. 3d 884, 887-88 (7th Cir. 2004) (Posner, J.). Whether a defendant has waived his right to challenge venue is an issue that rests within the wide discretion of the district court. *Cf. Stallings v. Hussman Corp.*, 447 F.3d 1041, 1046 (8th Cir. 2006) (applying abuse of discretion standard to district court's application of judicial estoppel doctrine).

The seminal cases applying the doctrine of waiver in the venue context are *Manchester Knitted Fashions, Inc. v. Amalgamated Cotton Garment & Allied Industries Fund*, 967 F.2d 688 (1st Cir. 1992) ("*MKF*") and *Marquest Medical Products, Inc. v. EMDE Corp.*, 496 F. Supp. 1242 (D. Colo. 1980) ("*MMP*"). Because the facts of *MKF* and *MMP* are remarkably similar those of the case at bar, the court examines them in depth.[9]

## B. *Seminal Cases*

### 1. **Manchester Knitted Fashions**

In *MKF*, the plaintiff filed its complaint against the defendant on July 6, 1990. 967 F.2d at 691. Before the plaintiff served the defendant on July 11, 1990, the parties engaged in negotiations to settle their dispute. *Id.* at 688, 691.

On August 14, 1990, the plaintiff filed an *ex parte* motion for a temporary restraining order ("TRO") and a preliminary injunction. *Id.* at 691. The plaintiff sought to enjoin the defendant from communicating with certain third parties. *Id.* On August 16, 1990, the defendant asked the court for an extension of time to respond to the complaint. *Id.* The plaintiff did not resist this request. *Id.* On the same date, the defendant filed a motion for hearing on the TRO and a motion for its counsel to appear pro hac vice. *Id.*

On August 17, 1990, the parties stipulated to and agreed upon an order to deny the motion for the TRO. *Id.* They also stipulated to and agreed upon an order mandating expedited discovery and limiting some of the defendant's communications with some third persons. *Id.* The parties' stipulations and proposed order stated that a hearing on the preliminary injunction motion would only be necessary if discovery did not resolve the dispute. *Id.*

---

[9] *MMP* is entitled to more persuasive force than the run-of-the-mill district court case. In *Yeldell v. Tutt*, 913 F.2d 533, 539 (8th Cir. 1990), the Eighth Circuit Court of Appeals quoted *Marquest* with approval for the proposition that Rule 12 "'sets only the outer limits of waiver; it does not preclude waiver by implication.'"

On September 14, 1990, the defendant filed an answer, in which it objected to venue. *Id.* The district court held that the defendant had waived its right to object to venue. *Id.* at 692. The district court reasoned:

> "[T]he defendants objected to the court's venue for the first time in their answer filed almost nine weeks after the complaint was served and almost four weeks after they submitted to the court's order adopting the stipulation of the parties. The defendants had over one month to preserve the defense of improper venue before they entered into their stipulation, which is certainly adequate time to sufficiently apprise them of any question as to venue . . . . Furthermore, the defendants submitted to the jurisdiction of the court by twice requesting hearings on the plaintiff's motions for a temporary restraining order and for a preliminary injunction and by its motion to permit the defendants' New York attorneys to appear in this court pro hac vice."

*Id.* at 692 (quoting *Manchester Knitted Fashions, Inc. v. Amalgamated Cotton Garment & Allied Indus. Fund*, No. C-90-310-L, 1990 WL 383798, *3 (D.N.H. Nov. 30, 1990)).

The First Circuit Court of Appeals affirmed. *Id.* at 692-93. The First Circuit rejected the defendant's argument that exigent circumstances "put [it] into a 'procedural straightjacket against which it [was] entitled to protection under the Federal Rules.'" *Id.* at 692. The First Circuit recognized that the defendant had secured local counsel only one day before it filed its motion for a hearing on the plaintiff's motion for a TRO. *Id.* The First Circuit emphasized that the issue of venue "can be raised so easily" and there was "nothing in the record which would have prevented the [defendant] from rasing the defense in conjunction with or before the motion for a hearing on the TRO or before entering into a stipulation whereby it submitted itself to the jurisdiction of the district court." *Id.* The First Circuit found the defendant had "ample time" to contest venue but failed to do so. *Id.* The First Circuit observed: "These parties could have just as easily inserted a sentence or paragraph in the motion first filed in the district court, preserving the issue. They did

not.  Thus the defense was waived." *Id.* (footnote omitted).  Finally, the court stressed the very important effect of the stipulation and order upon the defendant's right to challenge venue:

> We are further convinced of the propriety of the district court's ruling by the [defendant's] conduct.  Besides making the appearances noted above, the [defendant] conducted itself in a way demonstrating that it *unmistakingly* submitted itself to the jurisdiction of the New Hampshire court.  By jointly entering a stipulation whereby the [defendant] agreed to cease certain practices pending expedited discovery and communications with [the plaintiff] and then subjecting itself to the court's authority for a hearing on the preliminary injunction should the parties not amicably resolve [the plaintiff's] concerns as per the stipulation and order, the Fund *clearly* submitted itself in the cause through its conduct.  Neirbo[, 308 U.S. at 168.]

*Id.* at 692 (emphasis added).

### 2. **Marquest Medical Products**

In *MMP*, the plaintiff filed a declaratory judgment action for non-infringement and invalidity of a patent on January 15, 1980.  496 F. Supp. at 1244.  The defendants requested and received two extensions to respond to the plaintiff's complaint.  *Id.*  Meanwhile, the defendants also entered into a written stipulation with the plaintiff that the court adopted as a preliminary order in lieu of a hearing on a preliminary injunction.  496 F. Supp. at 1244.  The agreed-upon order governed the parties' actions going forward in the litigation.  *Id.*  Just as in the case at bar, one of the defendants waited approximately "six weeks" after entry of this preliminary order to file a motion to dismiss challenging venue.  *Id.* at 1244.

The district court in *MMP* found the defendants waived any challenge to venue. The district court stressed that, by entering into the stipulation and invoking the power of the court to enter the agreed-upon order, the defendants were estopped from later

challenging venue.  The district court wrote:

> By stipulating to an injunction which restrains both parties, defendants have avoided actual argument on the probability of success or failure of the merits of [the plaintiff's] claims. At the same time they have received affirmative preliminary relief under order of this court. I need not dwell on the obvious: in adopting the stipulated agreement I considered the propriety of the mutual injunctions in light of the facts and law in this case, albeit not determining the ultimate resolution of the litigation. Preliminary matters such as . . . venue should be raised and disposed of before a court considers the merits or quasi-merits of a controversy.  I agree with [the plaintiff] that defendants cannot "walk away" from this court order or this court's jurisdiction having once submitted themselves for the presumed advantages which they obtained.
>
> The policy of conserving judicial time and effort by disposing of preliminary matters is paramount to the countervailing policy of affording parties to a suit time to plead procedural defenses; especially where adequate time and opportunity are available. Defendants are not in the same position as the parties in [a case] where only one week was allowed in which to prepare a jurisdictional defense before a hearing on the motion for injunction pendente lite. Even in those circumstances, the court found that the parties were not put in a "procedural straight jacket."  I also find that defendants had adequate time and are not being required to forego valid defenses by hurried and premature pleading.
>
> Although I realize that defendants retained additional counsel . . . which perhaps delayed the formation of their litigation strategy, the appraisal of jurisdiction over one's person or the convenience of a judicial forum does not require thorough research of a complex area of law. . . . Therefore I conclude that defendants have waived any defense to . . . venue.

*Id.* at 1246 (citations omitted).

## C. *Analysis*

For the reasons set forth in First Bank's Supplemental Brief, the court finds Local Pride and Aaron Rubashkin waived their rights to challenge venue in the Northern District of Iowa. By their conduct, Local Pride and Aaron Rubashkin have submitted to venue in this District. *Neirbo*, 308 U.S. at 168. *MKF* and *MMP* are closely analogous and highly persuasive.

Although the court separately evaluates the conduct of Local Pride and Aaron Rubashkin, the result is the same. Local Pride and Aaron Rubashkin each waited approximately six weeks to challenge venue. During those six weeks, Local Pride and Aaron Rubashkin engaged in a wide variety of conduct in which they submitted to venue in this court. They participated in receivership proceedings. By stipulating and agreeing to the Order Appointing Limited and Interim Receiver, Local Pride placed itself under the partial control of this court and subjected itself to the court's authority for a hearing the following week. Aaron Rubashkin, acting as Agriprocessors' principal, likewise placed Agriprocessors under the partial control of the court. Further, the Order Appointing Limited and Interim Receiver expressly mandated that Aaron Rubashkin take certain affirmative actions. Although the court appointed Atec on a circumscribed and temporary basis, the fact remains that the court accepted jurisdiction over the case and the parties. In sum, both Local Pride and Aaron Rubashkin consented and bound themselves to this court.

The court has already expended a significant amount of time and effort working on this case. As a consequence, it would undermine judicial efficiency to allow counsel to challenge venue now. Put simply, it would be wrong to "dump" this case on a district court judge in another district who is wholly unfamiliar with the case.

For example, in deciding to order a receivership the court was required to evaluate the merits of First Bank's claims. This evaluation was not a perfunctory task:

> Although there is no precise formula for determining when a
> receiver may be appointed, [six] factors typically warranting
> appointment are [(1)] a valid claim by the party seeking the
> appointment; [(2)] the probability that fraudulent conduct has
> occurred or will occur to frustrate that claim; [(3)] imminent
> danger that property will be concealed, lost, or diminished in
> value; [(4)] inadequacy of legal remedies; [(5)] lack of a less
> drastic equitable remedy; [(6)] and likelihood that appointing
> the receiver will do more good than harm.

*Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316-17 (8th Cir. 1993);

*ABM Janitorial Servs.-N. Central, Inc. v. PAMI Ryan Towne Centre*, Nos. 08-CV-100-

LRR & 08-CV-123-LRR, 2008 WL 4809659, *2-*3 (N.D. Iowa Oct. 31, 2008). Not only

were the parties' substantive rights at issue, but the lives of millions of chickens hung in

the balance.

The court's conclusion might be different had Local Pride or Aaron Rubashkin not

stipulated to the agreed-upon receivership order, *cf. Am. Patriot*, 364 F. 3d at 887-88, or

if they had only filed motions for extension of time in which to file a responsive pleading,

*cf. MKF*, 967 F.2d at 692 n.1 (citing *J. Slotnik Co. v. Clemco Indus.*, 127 F.R.D. 435,

441 (D. Mass. 1989)) *and D'Amico v. Treat*, 379 F. Supp. 1004, 1007-08 (N.D. Ill.

1974). With Atec in place as a limited and interim receiver over the Collateral, the court

retained the power to preserve the status quo. The Collateral was in the possession of

Agriprocessors and Local Pride. The receivership remained in force with respect to Local

Pride for nearly two months without objection from either Local Pride or Aaron

Rubashkin. Atec's bond also remained in force for over two months. Local Pride and

Aaron Rubashkin clearly and unmistakably submitted themselves to the jurisdiction of and

venue in this court.

The court is cognizant of the fact that the Order Appointing Limited and Interim

Receiver was entered the day after the Complaint was filed. To be certain, the parties

were working under exigent circumstances. *See Aviation Supply*, 999 F.2d at 316 ("A

receiver is an extraordinary remedy that is only justified in extreme situations."). The equitable force of any excuse for not challenging venue prior to entry of the Order Appointing Limited and Interim Receiver on account of exigent circumstances wholly evaporated as the ensuing weeks rolled on without Local Pride or Aaron Rubashkin providing the court or First Bank with notice of a possible venue challenge. Indeed, far from notifying the court or First Bank of a possible venue challenge, Local Pride and Aaron Rubashkin filed motions to extend their time for filing answers at the last possible moments. In such motions, Local Pride and Aaron Rubashkin asked for more time to "answer" the Complaint and somewhat vaguely referenced other grounds for delay. At no time did Local Pride or Aaron Rubashkin ask or receive permission for more time to investigate the possibility of filing a Rule 12(b) motion.[10] Given the history of this case, the only conclusion the court can now reach is that the Motions were filed as an attempt to delay ultimate resolution of this action. The court will not reward such litigation tactics.

Finally, it is important to recognize that this is not a case where the forum selection clauses were unavailable to counsel for Local Pride or Aaron Rubashkin in the early stages of the litigation. Local Pride and Aaron Rubashkin were not placed in a "procedural straightjacket." The Credit Agreement was filed as an attachment to the Emergency Motion on the day after the Complaint was filed. As signatories to the Credit Agreement and Pledge Agreement, respectively, Local Pride and Aaron Rubashkin presumably knew about and were in possession of such contractual documents. Local Pride and Aaron Rubashkin have not denied First Bank's assertion that the parties were in negotiations over the relevant documents for some period of time prior to the filing of the action. And as the First Circuit in *MKF* and the district court in *MMP* recognized, venue is not a complex

---

[10] Aaron Rubashkin's attempt to rely on the title of his motion as evidence that he was asking for more time to "otherwise plead" is not well-taken. From context, the title simply indicates Aaron Rubashkin wanted more time to investigate whether he should assert his right against self-incrimination in his answer.

defense to investigate or assert.

In the words of the Eighth Circuit Court of Appeals, Local Pride and Aaron Rubashkin have not "compl[ied] with the spirit of [the Federal Rules of Civil Procedure], which is 'to expedite and simplify proceedings in the Federal Courts.'" *Yeldell v. Tutt*, 913 F.2d 533, 539 (8th Cir. 1990) (holding defendant waived right to challenge personal jurisdiction through conduct in litigation) (quoting C. Wright & A. Miller, 5A *Federal Practice & Procedure* § 1342, at 162 (2d ed. 1990)). Accordingly, the court finds they have waived their rights to challenge the venue of this action.

### VIII. DISPOSITION

The Motions to Dismiss (docket nos. 42 & 43) are **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 23rd day of February, 2009.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA