**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

FIRST BANK BUSINESS CAPITAL,
INC.,

               Plaintiff,

vs.

AGRIPROCESSORS, INC., LOCAL
PRIDE, LLC, ABRAHAM AARON
RUBASHKIN and SHOLOM
RUBASHKIN,

               Defendants.

No. 08-CV-1035-LRR

**ORDER**

_____

*TABLE OF CONTENTS*

I.     **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.   **PROCEDURAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

     *A.*    *Complaint* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
     *B.*    *Amended Complaint* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**
     *C.*    *Motion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

III.  **SUBJECT MATTER JURISDICTION** . . . . . . . . . . . . . . . . . . . . . . . **4**

IV.  **STANDARD OF REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**

V.    **RELEVANT FACTUAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . **6**

     *A.*    *Players* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**
     *B.*    *Credit Agreement and Guaranties* . . . . . . . . . . . . . . . . . . . . . **6**
     *C.*    *Loan Structure* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**
     *D.*    *Other Covenants* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**
     *E.*    *Diversion of Funds* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**
     *F.*    *Advance Requests* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9**
     *G.*    *Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **10**

VI.  **ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **10**

     *A.*    *Aaron Rubashkin* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**

**B.**     *Sholom Rubashkin* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**
      **1.**     *Invocation of the Fifth Amendment* . . . . . . . . . . . . . . . . **12**
         *a.*     *Legal background: Fifth Amendment* . . . . . . . . . . . **13**
         *b.*     *Sholom Rubashkin's invocation of the*
               *Fifth Amendment* . . . . . . . . . . . . . . . . . . . . . . . . **15**
         *c.*     *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . **16**
      **2.**     *Limited Guaranty* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **17**
         *a.*     *Duress* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **18**
         *b.*     *Satisfaction or offset of Limited Guaranty* . . . . . . . . . **20**
      **3.**     *Fraud* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **22**
         *a.*     *Execution of the Advance Requests* . . . . . . . . . . . . . **22**
         *b.*     *Plaintiff's damages* . . . . . . . . . . . . . . . . . . . . . . **24**
         *c.*     *Reasonable reliance* . . . . . . . . . . . . . . . . . . . . . . **26**

**VII.**   **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **28**

## I. INTRODUCTION

The matter before the court is Plaintiff First Bank Business Capital, Inc.'s "Motion for Summary Judgment against Abraham Aaron Rubashkin and Sholom Rubashkin" ("Motion") (docket no. 85).

## II. PROCEDURAL BACKGROUND

### A. Complaint

On October 30, 2008, Plaintiff filed a four-count Complaint (docket no. 1) against Defendants Agriprocessors, Inc. ("Agriprocessors"), Local Pride, LLC ("Local Pride"), Abraham Aaron Rubashkin ("Aaron Rubashkin") and Sholom Rubashkin (collectively, "Defendants"). Plaintiff sought all amounts due under a revolving loan agreement ("loan") between Plaintiff, Agriprocessors and Local Pride. Plaintiff requested the appointment of a receiver. In addition, Plaintiff sought all amounts due under guaranties executed by Aaron and Sholom Rubashkin in conjunction with the loan.

On December 23, 2008, Sholom Rubashkin filed an Answer (docket no. 46) to the Complaint. In his Answer, Sholom Rubashkin denied the substance of the Complaint and asserted his Fifth Amendment privilege against self-incrimination. On March 5, 2009,

Local Pride and Aaron Rubashkin filed Answers (docket nos. 55 & 56, respectively) to the Complaint in which they denied the substance of the Complaint.

### B. Amended Complaint

On June 16, 2009, Plaintiff filed an Amended Complaint (docket no. 64) against Defendants. The Amended Complaint contains four counts. Count I is a "Suit on Note" in which Plaintiff seeks all amounts due from Local Pride under the loan. Count II is a "Suit on Unlimited Guaranty" in which Plaintiff seeks judgment against Aaron Rubashkin for all amounts due under the loan. Count III is a "Suit on Limited Guaranty" in which Plaintiff seeks judgment against Sholom Rubashkin for $1 million, plus interests and costs, pursuant to his guaranty in favor of Plaintiff. Count IV is a fraud claim against Sholom Rubashkin.

On June 23, 2009, Aaron Rubashkin filed an Answer (docket no. 65) to the Amended Complaint in which he denied the substance of the allegations in Counts I and II. That same date, Sholom Rubashkin filed an Answer (docket no. 66) to the Amended Complaint in which he denied the substance of the allegations against him and asserted his Fifth Amendment privilege against self-incrimination. On June 24, 2009, Local Pride filed an Answer (docket no. 67) to the Amended Complaint. In its Answer, Local Pride admitted that it is obligated to pay "certain sums to [Plaintiff] under the terms of the Note" and admits that, "despite demand, it has not paid all amounts due under the Note to [Plaintiff]." Local Pride Answer at ¶¶ 54-55. However, Local Pride "denies that it has 'refused' to pay all amounts owing to [Plaintiff] but states that it is incapable of paying those amounts to [Plaintiff]." *Id.* at ¶ 55.

### C. Motion

On October 15, 2009, Plaintiff filed the Motion. In the Motion, Plaintiff asks the court to grant summary judgment in its favor on Count II of the Amended Complaint against Aaron Rubashkin and Counts III and IV of the Amended Complaint against Sholom

Rubashkin.

On November 30, 2009, Sholom Rubashkin filed a Resistance (docket no. 90). On December 8, 2009, Plaintiff filed a Reply (docket no. 93). Aaron Rubashkin has not filed a resistance to the Motion and the time for doing so has expired.[1]

Neither side requests oral argument on the Motion. The Motion is fully submitted and ready for decision.

### III. SUBJECT MATTER JURISDICTION

The court has diversity jurisdiction over this case because complete diversity exists and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332 ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States"). Plaintiff is a citizen of Missouri. Agriprocessors, Local Pride, Sholom Rubashkin and Aaron Rubashkin are all citizens of other states. The court is satisfied that subject matter jurisdiction exists.

### IV. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is genuine when 'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A

---

[1] On October 30, 2009, Aaron Rubashkin filed a "Motion for Extension of Time to File Response to Plaintiff's Motion for Summary Judgment" (docket no. 87). Aaron Rubashkin asked the court to extend the time to file a resistance to November 16, 2009. On November 2, 2009, United States Magistrate Judge Jon S. Scoles entered an Order (docket no. 89) extending the deadline for Aaron Rubashkin to respond to the Motion to November 16, 2009. To date, Aaron Rubashkin has not filed a resistance.

fact is material when it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "[T]o establish the existence of a genuine issue of material fact, 'a plaintiff may not merely point to unsupported self-serving allegations.'" *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008) (quoting *Bass v. SBC Commc'ns, Inc.*, 418 F.3d 870, 872 (8th Cir. 2005)). Rather, the nonmoving party "'must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor.'" *Anda*, 517 F.3d at 531 (quoting *Bass*, 418 F.3d at 873). The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Found. of Am., Inc.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see, e.g.*, *Baum v. Helget Gas Prods., Inc.*, 440 F.3d 1019, 1022 (8th Cir. 2006) ("Summary judgment is not appropriate if the non-moving party can set forth specific facts, by affidavit, deposition, or other evidence, showing a genuine issue for trial."). The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "'Evidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)).

# V.  RELEVANT FACTUAL BACKGROUND

## A.  Players

Plaintiff is a Missouri corporation with its principal place of business in St. Louis, Missouri.  Plaintiff is a lending institution that specializes in commercial loans.

At all relevant times, Agriprocessors was an Iowa corporation with its principal place of business in Postville, Iowa.  Agriprocessors owned and operated a kosher meatpacking plant in Postville.

Local Pride is an Iowa limited liability company with its principal place of business in Postville.  Local Pride was a wholly-owned subsidiary of Agriprocessors.

Aaron Rubashkin is a citizen of New York.  At all relevant times, Aaron Rubashkin was the sole shareholder and owner of Agriprocessors.

Sholom Rubashkin is a citizen of New York.  At all relevant times, Sholom Rubashkin was a corporate officer and manager of Agriprocessors.

## B.  Credit Agreement and Guaranties

On September 23, 1999, Plaintiff and Agriprocessors entered into a lending relationship pursuant to a Credit and Security Agreement ("Credit Agreement").  The Credit Agreement was later modified to add Local Pride as a borrower.  Pursuant to the Credit Agreement, Plaintiff agreed to lend Agriprocessors up to $35,000,000.  The parties also executed an "Exchange Revolving Note" ("Note") in the amount of $35,000,000 in connection with the Credit Agreement.  Plaintiff's Appendix ("Pl. App'x") (docket no. 85-3), at 233.  Sholom Rubashkin executed the Note on behalf of Agriprocessors and Local Pride.[2]

That same date, Aaron and Sholom Rubashkin executed guaranties ("Guaranties").  Aaron Rubashkin executed a guaranty ("Unlimited Guaranty") in which he guaranteed all

---

[2]  The court hereafter generally refers to Plaintiff's lending relationship with Agriprocessors, including both the Credit Agreement and Note, as the "loan."

obligations Agriprocessors owed to Plaintiff. Sholom Rubashkin executed a guaranty ("Limited Guaranty") in which he guaranteed all obligations Agriprocessors owed to Plaintiff, subject to a limit of $1,000,000, plus interest, costs and charges. As a condition of entering into the loan, Plaintiff required Aaron and Sholom Rubashkin to provide the Guaranties. The Guaranties allow Plaintiff to proceed directly against Aaron and Sholom Rubashkin for amounts owed under the loan in the event of default.

## C. Loan Structure

The Credit Agreement used a "borrowing base" formula to calculate Agriprocessors' available credit at any one time. *Id*. at 125. The borrowing base was determined by calculating the current value of Agriprocessors' collateral, such as its accounts receivable. Under this formula, Agriprocessors could borrow up to 85% of its "eligible" accounts receivable at a particular time. *Id*. at 126. Agriprocessors' accounts receivable were "eligible" if they remained unpaid and were no more than 60 days old. *Id*. at 126.

To request an advance of funds, Agriprocessors was required to provide Plaintiff with a "Notice of Borrowing." *Id*. at 129. A Notice of Borrowing required Agriprocessors to certify that certain conditions were met. These conditions included that: (1) no default or event of default existed under the Credit Agreement; (2) the representations and warranties of the Credit Agreement remained true; (3) the amount requested would not exceed the borrowing base; and (4) "all conditions precedent to an advance set forth in the Credit [A]greement have been satisified." *Id*. at 175.

Pursuant to the Credit Agreement, Agriprocessors was required to deposit daily customer payments on accounts receivable into a designated account at Decorah Bank & Trust Company ("Decorah Bank"). All proceeds or collections of collateral were to be held in trust for Plaintiff and were not to be commingled with Agriprocessors' other funds or property.

### D.  Other Covenants

The Credit Agreement also required Agriprocessors to comply with certain "Affirmative and Financial Covenants" ("Covenants").  *Id.* at 143.  One such Covenant was an agreement to comply with the Packers & Stockyards Act of 1921 ("Packers Act").  Compliance with the Packers Act required Agriprocessors to promptly pay for certain inventory and farm products.

Other Covenants included representations to Plaintiff that: (1) all accounts receivable were "genuine and legally enforceable obligation[s]" and not subject to a "Packers Act Trust"; (2) Agriprocessors was not "in violation of any law" that would adversely affect the collateral or Agriprocessors' business, operations or condition; and (3) no document or statement that Agriprocessors furnished to Plaintiff contained any untrue statement of material fact or omitted facts necessary to make the statements not misleading.  *Id.* at 141-43.

### E.  Diversion of Funds

On October 22, 2008, Decorah Bank notified Plaintiff that nine checks drawn on Agriprocessors' account at Luana Savings Bank ("Luana Account"), totaling $994,909.44, had been deposited at Decorah Bank but were returned due to insufficient funds in the Luana Account.  On October 30, 2008 Decorah Bank notified Plaintiff that four additional checks, totaling $396,503.21, that had been deposited at Decorah Bank were returned due to insufficient funds in the Luana Account.

Upon learning of the returned checks, Phillip Lykens ("Lykens"), one of Plaintiff's Executive Vice Presidents, traveled to Agriprocessors' facility in Postville and met with Sholom Rubashkin.  At this meeting, Agriprocessors' officers admitted that they deposited checks constituting Plaintiff's collateral into the Luana Account.  In other words, Agriprocessors' corporate officers admitted that they had failed to deposit customer payments in the Decorah Bank account, as required by the Credit Agreement.  They also

provided Lykens with a chart summarizing some of Agriprocessors' deposits into the Luana Account.

## F. Advance Requests

Agriprocessors submitted five Notices of Borrowing to Plaintiff to obtain advances under the loan on the following dates: August 1, 2008; September 2, 2008; October 7, 2008; October 20, 2008, and October 21, 2008[3] (together, "Advance Requests"). The funds Agriprocessors requested pursuant to the Advance Requests totaled $4,375,000.[4] The Advance Requests purportedly bear Sholom Rubashkin's signature. In the Advance Requests, Sholom Rubashkin certified on behalf of Agriprocessors that there were no defaults, that the warranties of the Credit Agreement remained true, that the amount requested would not exceed the borrowing base and that "all conditions precedent to an advance set forth in the Credit Agreement [had] been satisfied." *Id.* at 276-84.

According to Plaintiff, each of the Advance Requests was false for one or more of the following reasons: (1) Agriprocessors had not deposited all accounts receivable into Decorah Bank, but rather deposited some funds into the Luana Account; (2) Agriprocessors had falsified and/or overstated their accounts receivable; (3) documents that Agriprocessors submitted to Plaintiff with the Advance Requests did not accurately reflect Agriprocessors' assets or Plaintiff's collateral; (4) Agriprocessors was in violation of certain covenants of the Credit Agreement; (5) Agriprocessors was not in compliance with certain laws, including the Packers Act; and (6) Agriprocessors was not entitled to further advances under the Credit Agreement because it had exceeded the amount available under the Borrowing Base.

---

[3] The October 21, 2008 Notice of Borrowing was submitted to Plaintiff on that date but, for reasons unknown to the court, was incorrectly dated October 20, 2008.

[4] The amounts sought in each advance request were as follows: August 1, 2008: $475,000; September 2, 2008: $615,000; October 7, 2008: $1,100,000; October 20, 2008: $1,025,000; and October 20, 2008: $1,160,000.

## G. Default

On June 19, 2008, Plaintiff sent a letter to Agriprocessors. In the letter, Plaintiff notified Agriprocessors that it was in default of certain provisions of the Credit Agreement. On October 23, 2008, Plaintiff sent Agriprocessors a second notice of default. On October 29, 2008, Plaintiff notified Agriprocessors, Aaron Rubashkin and Sholom Rubashkin that Agriprocessors was in default of the Credit Agreement, accelerated all amounts due on the loan and terminated the Credit Agreement. Plaintiff demanded immediate payment of all amounts due on the Note and the Guaranties. Plaintiff also demanded that Agriprocessors turn over all collateral to Plaintiff. On November 4, 2008, Agriprocessors filed for Chapter 11 bankruptcy. *In re Agriprocessors, Inc.*, case no. 08-02751  The filing of the bankruptcy petition constituted an additional event of default under the Credit Agreement.

The balance due to Plaintiff under the loan has not been paid. Neither Aaron nor Sholom Rubashkin have paid Plaintiff pursuant to the Guaranties. According to Plaintiff, Agriprocessors owes $20,000,000 in principal on the Note. More than $1,000,000 in interest has accrued.

## VI. ANALYSIS

In the Motion, Plaintiff asks the court to grant summary judgment against Aaron Rubashkin on Count II of the Amended Complaint, which seeks all amounts due under the loan pursuant to Aaron Rubashkin's Unlimited Guaranty. Plaintiff also asks the court to grant summary judgment against Sholom Rubashkin on Counts III and IV of the Amended Complaint. Count III seeks judgment pursuant to Sholom Rubashkin's Limited Guaranty. Count IV seeks judgment based on alleged fraud by Sholom Rubashkin with respect to certain advances made pursuant to the Credit Agreement.[5]

The Guaranties provide that they "shall be governed by and construed and enforced

---

[5] In the Motion, Plaintiff does not seek relief as to Count I, which seeks judgment against Local Pride for the balance due under the loan.

in accordance with the laws of the State of Missouri." Pl. App'x at 237 & 245. Accordingly, the court shall apply Missouri law to Counts II and III. The events giving rise to Count IV, the fraud claim against Sholom Rubashkin, occurred in Iowa. Accordingly, the court shall apply Iowa law to Count IV.

### A. Aaron Rubashkin

To recover on its guaranty claim against Aaron Rubashkin, Plaintiff must show: "(1) that the defendant executed the guaranty, (2) that the defendant unconditionally delivered the guaranty to the creditor, (3) that the creditor, in reliance on the guaranty, thereafter extended credit to the debtor, and (4) that there is currently due and owing some sum of money from the debtor to the creditor that the guaranty purports to cover." *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 382 (Mo. 1993) (en banc) (citing *Linwood State Bank v. Lientz*, 413 S.W.2d 248, 256 (Mo. 1967)).

Aaron Rubashkin has not filed a resistance to the Motion and the time for doing so has expired. Thus, Local Rule 56.c applies with respect to Aaron Rubashkin. Local Rule 56.c provides:

> If no timely resistance to a motion for summary judgment is filed, the motion may be granted without prior notice from the court. If a party does not intend to resist a motion for summary judgment, the party is encouraged to file a statement indicating the motion will not be resisted.

LR 56.c. Further, the court deems Plaintiff's "Statement of Undisputed Material Facts" (docket no. 85-1) to be admitted as to Aaron Rubashkin. *See* LR 56.b ("The failure to respond, with appropriate citations to the appendix, to an individual statement of material fact constitutes an admission of that fact."). Accordingly, the court shall grant the Motion to the extent it seeks summary judgment against Aaron Rubashkin on Count II of the Amended Complaint.

The court further notes that Plaintiff has satisfied its prima facie case on this claim. Aaron Rubashkin executed the Unlimited Guaranty and delivered it to Plaintiff. The

Unlimited Guaranty provided that Aaron Rubashkin "unconditionally guarantee[d] the full payment and performance by Borrower of any such loans . . . advances . . . obligations . . . and all other obligations of Borrower or Lender however and whenever incurred or evidenced, whether direct or indirect, absolute or contingent, or due or to become due . . . ." Pl. App'x at 235. Plaintiff relied upon the Unlimited Guaranty when it decided to enter into the Credit Agreement and when it made advances to Agriprocessors. Agriprocessors defaulted on the Credit Agreement and remains in default. The total principal amount Agriprocessors owes to Plaintiff under the Credit Agreement exceeds $20,000,000. The total accrued interest on the loan exceeds $1,000,000. Plaintiff has demanded payment of these amounts from Aaron Rubashkin pursuant to the Unlimited Guaranty. Aaron Rubashkin has failed to pay these amounts. Accordingly, the court shall grant the Motion with respect to Count II.

### B. Sholom Rubashkin

In his Resistance, Sholom Rubashkin failed to respond to Plaintiff's Statement of Undisputed Material Facts. Accordingly, the court deems Plaintiff's Statement of Undisputed Material Facts to be admitted as to Sholom Rubashkin. *See* LR 56.b ("The failure to respond, with appropriate citations to the appendix, to an individual statement of material fact constitutes an admission of that fact.").

In Count III, Plaintiff seeks judgment against Sholom Rubashkin pursuant to the Limited Guaranty. In Count IV, Plaintiff seeks judgment against Sholom Rubashkin for alleged fraud. However, Plaintiff's ability to conduct discovery on these claims was hampered by Sholom Rubashkin's invocation of his Fifth Amendment privilege. The court first examines the Fifth Amendment implications with respect to these claims. Then, the court shall address the merits of each claim.

### 1. Invocation of the Fifth Amendment

During discovery, and in particular during Sholom Rubashkin's deposition, Plaintiff

attempted to question him as to many of the issues raised by the Motion. However, Sholom Rubashkin invoked his Fifth Amendment privilege against self-incrimination in response to nearly every question posed to him at his deposition. Sholom Rubashkin now relies almost entirely on his own affidavit ("Affidavit") (docket no. 90-3) to resist the Motion. Plaintiff argues that the court should disregard the Affidavit in light of Sholom Rubashkin's refusal to testify during discovery. Plaintiff argues that it would be unfair to permit Sholom Rubashkin to assert issues and raise defenses by affidavit after he refused to testify on the very same subject matter during discovery.

### a. Legal background: Fifth Amendment

Parties are free to invoke the Fifth Amendment in civil proceedings. *Cerro Gordo Charity v. Fireman's Fund Am. Life Ins. Co.*, 819 F.2d 1471, 1480 (8th Cir. 1987). However, the "'Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them.'" *Id.* (quoting *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)). Problems may arise, however, when a party invokes the Fifth Amendment during discovery but later wishes to testify on the same subject matter to avoid summary judgment. "'Because the privilege may be initially invoked and later waived at a time when an adverse party can no longer secure the benefits of discovery, the potential for exploitation is apparent.'" *Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 910 (9th Cir. 2008) (quoting *SEC v. Graystone Nash, Inc.*, 25 F.3d 187, 190 (3d Cir. 1994)). To prevent such exploitation, courts are generally free to fashion a response to an invocation of the Fifth Amendment in a civil proceeding that is "carefully balanced" and no broader than necessary "'to prevent unfair and unnecessary prejudice to the other side.'" *Id.* (quoting *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1265 (9th Cir. 2000)). In doing so, the court "should give due consideration to the nature of the proceeding, how and when the privilege was invoked, and the potential for harm or prejudice to opposing parties." *United States*

*v. Certain Real Property and Premises Known as: 4003-4005 5th Ave. Brooklyn, NY*, 55 F.3d 78, 84 (2d Cir. 1995) (Calabresi, J.).

When confronted with a subsequent waiver of the Fifth Amendment after its invocation during discovery, some courts have deemed it appropriate to strike the party's affidavit or other submissions in resistance to a motion for summary judgment. *See United States v. Parcels of Land*, 903 F.2d 36, 43 (1st Cir. 1990) (holding that district court had "ample authority" to strike claimant's affidavit submitted in opposition to government's motion for summary judgment where claimant "invoked his [F]ifth [A]mendment privilege in response to all questions asked by the government" at his deposition); *Bourgal v. Robco Contracting Enter., Ltd.*, No. 98-9249, 1999 WL 533791, at *1 (2d Cir. July 16, 1999) (holding that district court "was well within its discretion in precluding [d]efendants from submitting affidavits [in opposition to plaintiff's motion for summary judgment], given the fact that [d]efendants had invoked the Fifth Amendment and/or spousal immunity with regard to virtually every question ever asked of them in deposition") *In re Edmond*, 934 F.2d 1304, 1308 (4th Cir. 1991) (affirming bankruptcy court's decision to strike affidavit where party had invoked Fifth Amendment and stating that "the Fifth Amendment privilege cannot be invoked as a shield to oppose depositions while discarding it for the limited purpose of making statements to support a summary judgment motion."); *see also McKeller v. Rubel*, No. 1:07CV180 LMB, 2009 WL 913908, at *2-3 (E.D. Mo. March 31, 2009) (striking allegations of excessive force from complaint and stating that "a party may not rely on his own testimony or affidavit to support his version of a disputed issue where he has asserted his Fifth Amendment right not to answer questions concerning that very same issue."); *SEC v. Brown*, 579 F.Supp.2d 1228, 1235 (D. Minn. 2008) (refusing to consider interrogatory responses offered in resistance to motion for summary judgment because defendant's "invocation of the Fifth Amendment prevented the SEC from exploring and clarifying [his] responses in a deposition"); *cf. Khan v. Hakim*, 201 F.

App'x. 981, 984 (5th Cir. 2006) (per curiam) (affirming district court's application of judicial estoppel to exclude two affidavits submitted by party where the affidavits "presented answers to questions to which he had invoked his Fifth Amendment privilege in a deposition in [a] related bankruptcy case").

### b.    *Sholom Rubashkin's invocation of the Fifth Amendment*

Throughout discovery in the instant action, Sholom Rubashkin was a defendant in a related criminal proceeding, *United States v. Rubashkin*, case no. 08-CR-1324-LRR (N.D. Iowa) ("Criminal Proceeding"). The court is aware of the potential burden placed on a defendant who faces parallel civil and criminal proceedings. Specifically, a defendant might be "forced to choose between waiving the privilege and losing the [civil] case on summary judgment." *United States v. Two Parcels of Real Property Located in Russell County, Ala.*, 92 F.3d 1123, 1129 (11th Cir. 1996). In such circumstances, some courts have declined to strike an affidavit when doing so would necessarily require the court to rule against the party invoking the privilege. *See United States v. $55,526*, No. 2:06-CV-997-MEF, 2007 WL 4365467, at *2 (M.D. Ala. Dec. 11, 2007) (declining to strike claimant's affidavit because doing so "necessarily would result in an adverse judgment against [the claimant,] rather than merely stripping him of his most effective defense.").

When confronted with these choices, it is generally incumbent upon the defendant to seek the court's protection during discovery to accommodate both the defendant's Fifth Amendment rights and the defendant's ability to defend in the civil action. *See United States v. Certain Real Property and Premises known as 4003-4005 Fifth Ave., Brooklyn, NY*, 840 F. Supp. 6, 7 (E.D.N.Y. 1993) ("Although this Court should strive to accommodate the Fifth Amendment interests of a criminal defendant who is involved in a concurrent civil action, the burden is upon the claimant in the civil action to petition that court to institute some provisions to accommodate the conflicting interests of the defendant-claimant."), *aff'd*, 55 F.3d 78 (2d Cir. 1995). For example, a stay of discovery

15

or a protective order in the civil matter could protect the interests of a defendant who wishes to dispute liability in a civil action without jeopardizing his Fifth Amendment rights in a parallel criminal case. *See, e.g.*, *Pfizer Ireland Pharm. v. Albers Med., Inc.*, 225 F.R.D. 591, 592 (W.D. Mo. 2004) ("[T]he strongest justification for granting a stay involves a defendant's request where the defendant is required to defend itself in related civil and criminal proceedings, in which case a stay might be required to protect the defendant's Fifth Amendment rights."). Sholom Rubashkin did not seek to stay discovery in the instant action pending the outcome of the Criminal Proceeding. In fact, he *opposed* the government's request to intervene and stay discovery in the instant action, and argued that he would be "unduly burdened and prejudiced" if discovery were stayed. Brief in Support of Resistance to Government's Motion to Stay (docket no. 74-1), at 3.

### c. Conclusion

The court finds that Sholom Rubashkin should not be permitted to assert the Fifth Amendment in response to virtually every question at his deposition and later submit an affidavit that addresses those very issues in an effort to oppose the Motion. To hold otherwise would be unfair and prejudicial to Plaintiff because it was unable to obtain meaningful answers in Sholom Rubashkin's deposition and no longer has the benefit of discovery to probe the facts raised in the Affidavit. After invoking the Fifth Amendment and thereby shielding himself from questioning during discovery, Sholom Rubashkin should not later be allowed to offer his own, undisturbed account of events as a means of creating a factual dispute.

The Fifth Amendment concerns are further mitigated by the fact that Sholom Rubashkin did not seek a stay of discovery in the instant action, but rather actively opposed a stay. If he desired to participate in discovery in the instant action and simultaneously maintain his Fifth Amendment rights in the Criminal Proceeding, a stay of discovery in the civil action would have been the appropriate course. Such measures would have

accommodated his Fifth Amendment rights while also affording Plaintiff the benefit of later discovery on the issues raised by the Motion. However, he chose instead to resist a stay of discovery. As a result, Plaintiff was unable to probe the issues now raised for the first time in Sholom Rubashkin's Resistance. The court finds that Sholom Rubashkin's active opposition to a stay in the instant action weighs in favor of striking the Affidavit. *See United States v. Real Property and Premises Known as 4408 Hillside Court*, No. 91-2218, 1992 WL 120217, at *3-*4 (June 2, 1992 4th Cir.) (recognizing the potential burden on Fifth Amendment in parallel civil and criminal proceedings but affirming district court's decision to strike party's affidavit because, "during the four month discovery period provided, [the party] sought no delay, protective order, or other accommodation from the government or the district court" with respect to discovery).

As the party asserting the privilege, it was Sholom Rubashkin's responsibility to seek the court's assistance if he wished to protect his Fifth Amendment rights in the Criminal Proceeding and also participate in discovery in the instant action. *See id.* (holding that district court did not err by not imposing accommodations *sua sponte* "when no accommodation was proposed at the relevant time by the complaining party"); *see also 4003-4005 5th Ave.*, 55 F.3d at 84 (stating that "*if there is a timely request made to the court*, the court should explore all possible measures in order to select that means which strikes a fair balance and accommodates both parties") (emphasis added) (citations and quotations omitted). In light of his failure to seek such accommodation, and the accompanying prejudice to Plaintiff, the court shall strike those portions of the Affidavit that address issues about which Sholom Rubashkin refused to testify during his deposition.

### 2. *Limited Guaranty*

Sholom Rubashkin first argues that the Motion should be denied as to Count III because the Limited Guaranty is unenforceable on grounds of "duress and coercion." Brief in Support of Resistance ("Def. Brief") (docket no. 90-2), at 6. Plaintiff argues that

Sholom Rubashkin has waived this defense because he failed to assert it in his Answer. Plaintiff also argues that, even if allowed to belatedly assert a duress defense, Sholom Rubashkin has provided no factual support for such a defense.

Sholom Rubashkin also argues that, even if the Limited Guaranty is enforceable, the Motion must be denied because a genuine issue of material fact exists "as to whether [his] pledge of interest in Local Pride and [Plaintiff's] acquisition of Local Pride satisfy or offset [the Limited Guaranty]." *Id.* at 7.

### a. Duress

The court first addresses whether Sholom Rubashkin has waived his duress defense. Duress and coercion are affirmative defenses. *See* Fed. R. Civ. P. 8(c) (listing "duress" as one of several affirmative defenses). The Federal Rules of Civil Procedure require that a responding party assert all affirmative defenses in the party's responsive pleading. *See* Fed. R. Civ. P. 8(c) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . duress[.]"). "Generally, failure to plead an affirmative defense results in a waiver of that defense." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008). "However, when an affirmative defense is raised in the trial court in a manner that does not result in unfair surprise, technical failure to comply with Rule 8(c) is not fatal." *Id.* In other words, "Rule 8(c) is not an absolute bar to a party's belated attempt to plead an affirmative defense[.]" *Id.* Rather, the court must make a "discretionary determination" as to whether a party has waived the affirmative defense based on a failure to plead the defense in its answer. *Id.*

Sholom Rubashkin did not assert duress or coercion as an affirmative defense in either his Answer to the Complaint or in his Answer to the Amended Complaint. *See* Answer to Complaint (docket no. 46), at 8 and Answer to Amended Complaint (docket no. 66), at 8. In fact, the first reference to such defenses appeared in Sholom Rubashkin's Resistance to the Motion. In such circumstances, the court finds that Sholom Rubashkin

has waived the defense of duress based on his failure to plead the defense. However, out of an abundance of caution, the court shall turn to consider the merits of his duress defense.[6]

Sholom Rubashkin argues that he executed the Limited Guaranty "while suffering from coercion and duress from Plaintiff." Sholom Rubashkin's Statement of Undisputed Material Facts ("Def. Statement of Facts") (docket no. 90-1), at 1. Specifically, he contends that Lykens "coerced" him into signing the Limited Guaranty. Def. Brief at 6. He argues that Lykens "knew that [Agriprocessors] was undercapitalized and that the survival of [Agriprocessors] depended on outside financing." *Id.* Thus, Sholom Rubashkin asserts that "he was prevented from exercising free will by Lykens' representations that [Plaintiff] would not fund [Agriprocessors] unless he executed the personal guarantee . . . ." *Id.*

The court finds that Sholom Rubashkin's duress defense fails as a matter of law. "In order to claim duress in avoiding a contract a person must be so oppressed from the wrongful conduct of another as to deprive him of free will." *Schmalz v. Hardy Salt Co.*, 739 S.W.2d 765, 768 (Mo. App. 1987). However, it is well-settled under Missouri law that the "[f]inancial necessity of a party, not caused by the other party to a contract, does not constitute duress." *Id.*

Sholom Rubashkin's duress defense fails because it is based solely on the grounds that Plaintiff knew that Agriprocessors was in need of financing and that Plaintiff would not enter into the Credit Agreement with Agriprocessors unless he executed the Limited

---

[6] In support of his duress defense, Sholom Rubashkin relies largely on the Affidavit. However, when specifically questioned in his deposition about a potential duress defense to the enforcement of the Limited Guaranty, he asserted the Fifth Amendment to each question. As previously discussed, the court need not consider the portions of the Affidavit that speak to matters about which he refused to testify during his deposition or disclose during discovery. However, even when it considers those portions of the Affidavit, the court finds that Sholom Rubashkin's claim of duress is without merit.

Guaranty. Sholom Rubashkin does not allege, much less show, any "wrongful conduct" on the part of Plaintiff. Rather, Lykens's alleged refusal to extend credit to Agriprocessors without the Limited Guaranty is simply a decision made by Plaintiff to protect itself against risk. *See Middleton Enter. Inc. v. Churm*, 618 F. Supp. 477, 480 (E.D. Mo. 1985) (rejecting duress defense to guaranty claim because the lender's "refusal to extend credit without the guaranty reflects a cautious evaluation of and insurance against risk rather than coercion"). Sholom Rubashkin's decision to execute the Limited Guaranty, although perhaps motivated by a desire to protect the financial position of Agriprocessors, was not the product of wrongful conduct that overcame his free will. *See id.* (although the guarantors likely "felt apprehensive about taking on personal liability . . . and further felt pressured to sign the guaranty by [the lender's] refusal to make the loan without such security, defendants' evaluation must be deemed to be matters of business judgment"); *see also ITT Comm. Fin. Corp.*, 854 S.W.2d at 384 (holding that guarantor's claim that he executed the guaranty because he "'did not want to see [the borrower] cut off'" did not constitute duress); *Grant Renne & Sons, Inc. v. J. E. Dunn Const. Co.*, 633 S.W.2d 166, 169 (Mo. App. 1982) (execution of settlement and release "solely because of [defendant's] financial necessity" did not constitute duress where financial difficulties were not caused by any wrongful conduct of the other party to the agreement). No reasonable jury could conclude that Sholom Rubashkin executed the Limited Guaranty at a time when his free will had been overcome by some wrongful conduct by Plaintiff. Accordingly, his duress defense fails as a matter of law.

### b.      *Satisfaction or offset of Limited Guaranty*

Other than the duress defense, Sholom Rubashkin does not dispute the validity of the Limited Guaranty. However, he argues that the Limited Guaranty should be "deemed satisfied or set off based upon Plaintiff's acquisition of the Local Pride facility in Gordon, [Nebraska]." Def. Statement of Facts at ¶ 4. Specifically, he asserts that he "understood

that he pledged his interest in Local Pride to [Plaintiff] as security for the [Limited Guaranty], and that Local Pride is worth more than the [Limited Guaranty], and that [Plaintiff] now controls the plant in whole or in part." Def. Brief at 7. In addition, he argues that "[t]he amount of 'interest,' and 'costs and expenses' claimed by Plaintiff to equal '$2,000,000.00' is inflated, erroneous, unreasonable and excessive." Def. Statement of Facts at ¶ 5.

Plaintiff argues that it has included all of its recoveries to date, including the assets acquired in Local Pride, in determining the amounts owed pursuant to the Credit Agreement and the Guaranties. Sholom Rubashkin puts forth no evidence to controvert Plaintiff's showing that it accounted for all of its recoveries to date when it calculated the amounts owed under the Credit Agreement and the Guaranties. Rather, he simply asserts that Plaintiff's acquisition of Local Pride "satisfies the amount of the [Limited Guaranty]" and that his obligations under the Limited Guarantee "cannot equal the $2,000,000" Plaintiff claims. Def. Statement of Facts at ¶¶ 10-11. These assertions, unsupported by any evidence, are insufficient to overcome summary judgment. *See Rose-Maston v. NME Hosp., Inc.*, 133 F.3d 1104, 1109 (8th Cir. 1998) ("Conclusory affidavits, standing alone, cannot create a genuine issue of material fact precluding summary judgment."); *see also Bacon v. Hennepin County Med. Ctr.*, 550 F.3d 711, 716 (8th Cir. 2008) ("A properly supported motion for summary judgment is not defeated by self-serving affidavits. Rather, the [non-moving party] must substantiate allegations with sufficient probative evidence that would permit a finding in [their] favor.") (citations and quotation marks omitted). The Affidavit contains nothing more than conclusory statements reflecting Sholom Rubashkin's belief that Plaintiff's acquisition of Local Pride somehow satisfied his obligations under the Limited Guaranty and that the amount owed "cannot" equal the $2,000,000 claimed.

### 3. Fraud

To succeed on its fraud claim, Plaintiff must prove the following elements: "(1) representation; (2) falsity; (3) materiality; (4) scienter; (5) intent; (6) justifiable reliance; and (7) resulting injury." *Smidt v. Porter*, 695 N.W.2d 9, 22 (Iowa 2005). Sholom Rubashkin argues that summary judgment is inappropriate on Plaintiff's fraud claim for three reasons. First, he argues that a genuine issue of material fact exists as to "whether [he] made or caused to be made the five specified loan advance requests." Def. Brief at 8. Second, he contends that a genuine issue of material facts exists as to "whether [Plaintiff] has sustained any damages as a result of any fraud connected to the five specific advance requests." *Id.* Third, he asserts that a genuine issue of material fact exists as to "whether [Plaintiff] reasonably relied upon [Agriprocessors'] financial representations for the October 20, 2008 advances." *Id.* at 9.

#### a. Execution of the Advance Requests

Sholom Rubashkin contends that he did not sign the Advance Requests and that he did not make or cause them to be made. Plaintiff first argues that Rubashkin is precluded from contesting this issue because he invoked the Fifth Amendment in response to most questions posed to him in his deposition regarding the Advance Requests. However, when asked whether the Advance Requests bore his signature, Sholom Rubashkin stated that four of the Advance Requests did not bear his signature. Sholom Rubashkin asserted the Fifth Amendment with regard to whether he signed the remaining advance request.[7] When asked whether he authorized or directed someone else to affix his signature to the Advance Requests, Sholom Rubashkin invoked the Fifth Amendment as to each request.

With regard to whether Sholom Rubashkin actually signed the Advance Requests,

---

[7] Rubashkin denied signing the advance requests made on the following dates: August 1, 2008; September 2, 2008; October 22, 2008; and October 21, 2008. With regard to the October 7, 2008 advance request, Rubashkin asserted the Fifth Amendment when asked if it bore his signature. *See* Pl. App'x at 93-104.

the court declines to strike the portions of the Affidavit in which he denies doing so. During his deposition, he did not assert the Fifth Amendment when asked if he signed all of the Advance requests. Rather, he clearly denied signing four of them. As previously discussed, the court will strike only those portions of the Affidavit that speak to subject matter on which he refused to testify at his deposition. Accordingly, the court shall not strike those portions of the Affidavit in which Sholom Rubashkin denies signing the Advance Requests.

Plaintiff also argues that Sholom Rubashkin is precluded from raising this issue in light of his criminal conviction. Three of the Advance Requests relate to counts on which Sholom Rubashkin was found guilty of bank fraud, making false statements and reports to a bank and wire fraud in the Criminal Proceeding. *See* Verdict Forms (docket no. 736) in Criminal Proceeding at Counts 12-14, 26-28 and 50-52. "'It is well established that prior criminal proceedings can work an estoppel in a subsequent civil proceeding, so long as the question involved was distinctly put in issue and directly determined in the criminal action.'" *SEC v. Gruenberg*, 989 F.2d 977, 978 (8th Cir. 1993) (per curiam) (citing *McNally v. Pulitzer Pub. Co.*, 532 F.2d 69, 76 (8th Cir. 1976)). However, issue preclusion based on the Criminal Proceeding is inapplicable in the instant action because a final judgment has not entered in the Criminal Proceeding. *See B & B Hardware, Inc. v. Hargis Indus., Inc.*, 569 F.3d 383, 387-88 (8th Cir. 2009) (stating that, for issue preclusion to apply, "the issue sought to be precluded must have been determined by a valid and final judgment").[8] In addition, the court notes that two of the Advance Requests were not at issue in the Criminal Proceeding and therefore would not be subject to issue preclusion. *See id.* at 387 (stating that "the issue sought to be precluded must have been

_____

[8] Federal law governs the preclusive effect of the Criminal Proceeding. *See Poe v. John Deere Co.*, 695 F.2d 1103, 1105 (8th Cir. 1982) (stating that federal law governs issues of res judicata where the prior judgment was rendered by a federal court on a claim arising under federal law).

actually litigated in the prior action"). Accordingly, at this time, the court declines to apply issue preclusion based on Sholom Rubashkin's convictions in the Criminal Proceeding.

Plaintiff asserts that Sholom Rubashkin "*directly provided* [Plaintiff] at least five false and misleading Notices of Borrowing that he *signed and certified* in requesting that [Plaintiff] make advances . . . under the Credit Agreement[.]" Pl. Statement of Facts at ¶ 51 (emphasis added). In support of this claim, Plaintiff offers the Advance Requests themselves, which purportedly bear Sholom Rubashkin's signature, the Lykens affidavit and portions of Sholom Rubashkin's deposition. However, Sholom Rubashkin denies that he signed the Advance Requests or made or caused them to be made. He offers his Affidavit in support of this claim and, at least with respect to four of the Advance Requests, this assertion is not inconsistent with his deposition testimony in which he expressly denied signing four of the Advance Requests. The court finds that the Affidavit, in connection with his deposition testimony, creates a genuine issue of material fact as to whether Sholom Rubashkin signed the Advance Requests that constitute the alleged fraudulent representations to Plaintiff. Accordingly, the court shall deny the Motion to the extent it seeks summary judgment on Count IV of the Amended Complaint.[9]

### b. *Plaintiff's damages*

Sholom Rubashkin argues that a genuine issue of material fact exists as to whether

---

[9] The court notes that Plaintiff also contends that Sholom Rubashkin "executed *or caused to be executed* the Notices of Borrowing and provided the required representations on behalf of [Agriprocessors]." Pl. Statement of Facts at ¶ 24 (emphasis added). However, this statement is in reference to Agriprocessors' advance requests in general, rather than to the five allegedly fraudulent Advance Requests that form the basis of Plaintiff's fraud claim. Further, Plaintiff offers no evidence, aside from Sholom Rubashkin's invocation of the Fifth Amendment privilege during his deposition, to support a theory that he directed another person to execute the Advance Requests. The court finds that this evidence is insufficient to support a finding that Plaintiff is entitled to judgment as a matter of law on Count IV of the Amended Complaint.

Plaintiff sustained any damages "as a result of any fraud connected to [the Advance Requests]." Def. Brief at 8. Specifically, he contends that the funds Plaintiff advanced to Agriprocessors pursuant to the Advance Requests were repaid and, therefore, "any fraud did not proximately cause any damages or loss." *Id.* In support of this contention, Sholom Rubashkin offers as evidence the Affidavit, in which he states that "the monies loaned to [Agriprocessors] on [August 1, 2008, September 2, 2008 and October 7, 2008] . . . [were] repaid to Plaintiff from monies taken by [Plaintiff] from the depository account and applied to [Agriprocessors'] revolving note with [Plaintiff]." Affidavit at ¶ 18. He also states in the Affidavit that the advances made pursuant to the October 20, 2008 Advance Requests were essentially repaid because Plaintiff "received monetary value from [Agriprocessors'] and/or [Agriprocessors'] accounts receivables equal or in excess of the amounts obtained in these advances . . . ." *Id.* at ¶ 19.

Plaintiff calculated its losses by totaling the undisputed amounts Plaintiff paid to Agriprocessors pursuant to each Advance Request, for a total of $4,375,000. Plaintiff also offers the Lykens Affidavit, in which Lykens avers that more than $20,000,000 in principal remains outstanding on the loan. Additionally, Lykens states that Plaintiff, in arriving at these figures, has credited all of Plaintiff's recoveries to date and "has not included obligations of Agriprocessors under its financing obtained in its bankruptcy case." Pl. App'x at 290. As previously discussed, this calculation has been deemed admitted because Sholom Rubashkin failed to respond to Plaintiff's Statement of Material Facts. *See* LR 56.b ("The failure to respond . . . to an individual statement of material fact constitutes an admission of that fact."). Sholom Rubashkin offers no specific evidence to rebut Plaintiff's calculations. Rather, he relies entirely on the conclusory statements of the Affidavit, including the summation that, "[s]ince [Agriprocessors] repaid the moneys obtained by the advances . . . [Plaintiff] has sustained no monetary loss or damages . . . ." Affidavit at ¶ 21. These conclusory statements that the advances were somehow repaid

are insufficient to overcome summary judgment. *See Rose-Maston, Inc.*, 133 F.3d at 1109 ("Conclusory affidavits, standing alone, cannot create a genuine issue of material fact precluding summary judgment."); *see also Bacon*, 550 F.3d at 716 ("A properly supported motion for summary judgment is not defeated by self-serving affidavits. Rather, the [non-moving party] must substantiate allegations with sufficient probative evidence that would permit a finding in [their] favor.") (citations and quotations omitted). Accordingly, the court finds that there are no genuine issues of material fact with respect to the amounts owed pursuant to the Advance Requests.[10]

### c. *Reasonable reliance*

Sholom Rubashkin also contests whether Plaintiff reasonably relied on the Advance Requests dated October 20, 2008.[11] In support of this argument, he offers as evidence the Affidavit, in which he states that Plaintiff "knew that one or both of these advances . . . was premised in part upon guesstimated or projected sales and revenues in anticipation of the approaching Jewish holiday period and thus [Plaintiff] could not reasonably rely upon any financial representations accompanying these two requests." Affidavit at ¶ 20.

Plaintiff states in its Statement of Undisputed Material Facts that it accepted the statements made in the Advance Requests as true and accurate, that it had no reason to believe they were untrue and that it relied on such representations in making each of the

---

[10] To the extent Sholom Rubashkin argues that any recovery Plaintiff obtains outside of the instant action should first be applied to the advances at issue, as opposed to any other amounts owing under the loan, Sholom Rubashkin offers no authority in support of such proposition. Plaintiff has offered undisputed evidence that more than $20,000,000 remains owing on the loan.

[11] Sholom Rubashkin does not appear to argue that it was unreasonable for Plaintiff to rely on the representations that accompanied the other three Advance Requests. Accordingly, the court confines its analysis to whether Plaintiff reasonably relied on the representations made in conjunction with the Advance Requests dated October 20, 2008.

five advances. Each of these propositions is supported by the Lykens Affidavit. As previously discussed, each of these statements of fact are deemed admitted because Sholom Rubashkin failed to respond to them. *See* LR 56.b.

In addition, Plaintiff argues that Sholom Rubashkin is precluded from challenging the reasonableness of Plaintiff's reliance in light of the fact that he refused to testify on this issue in his deposition. When deposed, Sholom Rubashkin asserted the Fifth Amendment and refused to testify when asked whether he knew that the representations were material to Plaintiff, whether he intended for Plaintiff to rely on the certifications and whether he knew that Plaintiff would not advance funds if it knew certain representations were untrue. *See* Pl. App'x at 101-04. As previously discussed, Sholom Rubashkin cannot refuse to testify to these matters during discovery and later submit an affidavit contesting the same issues in an effort to resist summary judgment. It would be unfair to Plaintiff to allow such tactics now that it no longer has the benefit of discovery, and such unfairness is heightened by Sholom Rubashkin's failure to seek any accommodation for his Fifth Amendment rights during the discovery process. Accordingly, the court shall strike those portions of the Affidavit that relate to the reasonableness of Plaintiff's reliance on the Advance Requests dated October 20, 2008. Plaintiff has offered sufficient evidence to support a finding that it relied upon the representations submitted with the Advance Requests dated October 20, 2008. Sholom Rubashkin has failed to rebut this evidence such that a reasonable jury could find in his favor. Accordingly, the court finds that there are no genuine issues of material fact with respect to the reasonableness of Plaintiff's reliance on the representations made in connection with the Advance Requests dated October 20, 2008.

The court notes, however, that even if it considered the stricken portions of the Affidavit, its findings with respect to the reasonableness of Plaintiff's reliance would be the same. To state a claim for fraud under Iowa law, a plaintiff's reliance must be

*justified*, not reasonable.  *See Spreitzer v. Hawkeye State Bank*, No. 06-0877, 2009 WL 3486740, at *8 (Iowa Oct. 30, 2009).  As the Iowa Supreme Court has explained, the justified standard "means the reliance does not necessarily need to conform to the standard of a reasonably prudent person, but depends on the qualities and characteristics of the particular plaintiff and the specific surrounding circumstances."  *Id.* (citing *Lockard v. Carson*, 287 N.W.2d 871, 878 (Iowa 1980)).  This standard "reflects that fraudulent misrepresentation is an intentional tort, and like other intentional torts, recovery is not necessarily barred by the fault of the plaintiff that contributed to the damage."  *Id.* (citing Restatement (Second) of Torts § 545A cmt. a).  Applying this standard, Plaintiff's fraud claim would not be defeated simply because it had some knowledge that the information submitted in connection with the October 20, 2008 Advance Requests contained certain estimations.  Even assuming that Plaintiff had knowledge of estimations regarding holiday sales, such knowledge does nothing to suggest that Plaintiff was aware of the diversion of accounts receivable collateral and other actions that would increase the availability of funds under the loan.  In sum, Sholom Rubashkin fails to put forth sufficient evidence to support a finding that Plaintiff's reliance on the representations was not justified.

## VII.  CONCLUSION

The Motion (docket no. 85) is **GRANTED IN PART AND DENIED IN PART** as follows:

(1)     The Motion is **GRANTED** in favor of Plaintiff and against Abraham Aaron Rubashkin as to Count II of the Amended Complaint in the amount of $21,000,000.

(2)     The Motion is **GRANTED** in favor of Plaintiff and against Sholom Rubashkin as to Count III of the Amended Complaint in the amount of $2,000,000.

(3)     The Motion is **DENIED** as to Count IV of the Amended Complaint.

**IT IS SO ORDERED.**

**DATED** this 19th day of January, 2010.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA